ENID M. RANKIN, APPELLANT, V. J. L. BRANDEIS & SONS, APPELLEE.

280 N. W. 260

FILED JUNE 17, 1938. No. 30335.

*Foster & Yates,* for appellant.

*Kennedy, Holland, De Lacy & Svoboda, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and RYAN, District Judge.

MESSMORE, J.

Plaintiff brought this action against defendant for damages on account of falling on the floor in defendant's store. At the conclusion of plaintiff's testimony, defendant moved for a directed verdict which was sustained. Plaintiff appeals.

Plaintiff's petition alleges, in substance, that on or about May 18, 1936, between 9:30 and 10 a. m., plaintiff entered the first floor of defendant's store in Omaha through the south door of the Sixteenth street entrance, for the purpose of transacting business in the store; that she proceeded through one of the main aisles, running east and west, until she reached the third aisle, running north and south, when she attempted to go south in an effort to reach the elevators, which are on the south side of the east part

of the main floor; that, while she was in the exercise of due care on her part, plaintiff suddenly slipped on water and soap, negligently and carelessly left by defendant on the tiled floor, and was injured; that such negligence was the proximate cause of plaintiff's injury. She alleged further that defendant failed to warn plaintiff of the dangerous condition of the tiled floor, and failed to keep the tiled floor in a clean and safe condition, when defendant knew, or in the exercise of reasonable care should have known, that the condition of the tiled floor was likely to cause the plaintiff to slip and fall. The defendant's answer was a general denial, and alleged that any injuries sustained by plaintiff were due to her negligence, which was more than slight. The reply was a general denial.

The pertinent facts follow: Plaintiff, on May 18, 1936, entered defendant's store in the manner as hereinbefore stated in her petition, at about 9:30 a. m., or shortly thereafter. Her purpose was to shop. Just as she reached a certain aisle near the elevators, as described in her petition, her feet went from under her and she fell on the floor on her left side. She testified: "Well, the whole left side; I just went clear down, and my ankle was clear under me, and my knee and my hip, I hit back here on my shoulder; I just went right down." She was helped to her feet and leaned against a counter until a chair was obtained, and she was helped down into the chair. She looked at the aisle in front of her and saw soapy water on the floor. In describing the size of the spot of soapy water, she testified: "Well, I could not measure it, but I would say it was about the size,—oh, better than my hand; maybe a small plate. * * * Q. Approximately three or four inches or six inches in diameter, something like that? A. I would say just about the size of a small plate; I could not be any more exact than that." A floorwalker came up at that time, stood across from plaintiff and to her right, and ordered a clerk to send for a nurse and a wheel chair. When the nurse and wheel chair arrived, plaintiff was put in the chair and taken to the emergency room in another part of the store.

She testified that the floorwalker took care of the situation, and when he came over to the place where the plaintiff had fallen he turned to another clerk and said: "What is that water doing on the floor, clean it up at once." This statement was denied by the floorwalker. The floorwalker testified that the floors were scrubbed usually early in the morning and previously had been scrubbed in the nighttime, and that the scrubbing of the floors was completed before the opening of the store at 9 o'clock in the morning; that he called a nurse. Plaintiff's husband, who arrived shortly after the accident, found the plaintiff in the emergency room and in an hysterical condition. He testified that he examined the aisle of the store where the accident had taken place, and that he found nothing; that the floor was bare and dry. He had examined his wife's shoes and testified that "they were still damp, on the left shoe, on the outside near the heel. * * * I found they were damp, and it was an oily, watery substance; * * * I found the same type of oily substance that you have in soapy water. * * * Q. Was there any marks on the shoe? A. Just the scuff marks from the sliding."

The sole question presented by this appeal is whether there was sufficient evidence of negligence on the part of the defendant to require submission of the cause to the jury.

The duty of a proprietor of a store to invitees is well stated in *Glenn v. Grant Co.*, 129 Neb. 173, 260 N. W. 811: "We are committed to the view that the proprietor of a store is not an insurer against accidents to customers, but is bound to exercise reasonable care and prudence to keep the premises, which the public is tacitly invited to use, safe for that purpose"—citing *Broadston v. Beddeo Clothing Co.*, 104 Neb. 604, 178 N. W. 190; *Thompson v. Young Men's Christian Ass'n*, 122 Neb. 843, 241 N. W. 565.

In the case of *Wine v. Newcomb, Endicott & Co.*, 203 Mich. 445, 169 N. W. 832, it was said: "As a general proposition, a customer in such a place (a department store) has the right to rely upon the safety of passage along pas-

sageways used by customers. *Brown v. Stevens*, 136 Mich. 311; *Bloomer v. Snellenburg*, 221 Pa. St. 25."

Plaintiff relies on the case of *Glenn v. Grant Co., supra*, wherein the plaintiff fell on an oiled floor which had been oiled by the servants of the defendant company about four days previous to her fall. An employee of the store testified to the condition of the floor and to seeing plaintiff fall. The court said (p. 176) : "It would seem that * * * in a salesroom * * * the customer might properly assume that the floor, then open to the general public, was reasonably safe to walk upon and over, and not in a dangerous condition." This case is distinguished from *Broadston v. Beddeo Clothing Co., supra, Thompson v. Young Men's Christian Ass'n, supra*, and *Sokolof v. First Nat. Bank*, 122 Neb. 892, 240 N. W. 547, in that the defendant itself, and no one else, created the condition, while in the other cases cited the defendant had no knowledge, actual or implied, of the dangerous condition claimed to have existed. It was stated further in the opinion (p. 175) : "It may also be conceded that the mere fact that an invitee falls on the floor of a salesroom or store does not of itself raise a presumption of negligence on part of the owner. (The above rule was announced in *Broadston v. Beddeo Clothing Co., supra*.) But, on the other hand, what constitutes due care of an inviter is always determined by the circumstances and conditions surrounding the transaction under consideration."

Defendant relies principally on the case of *Broadston v. Beddeo Clothing Co., supra*. Aside from the care required of a store proprietor, as herein stated, the court announced the burden of proof in such case as follows: "Where recovery is sought for personal injury sustained by a customer in falling upon a stairway on the ground that the proprietor of the store was negligent in permitting the stairway to be defective in some particular causing the accident, the burden is upon the plaintiff to prove that the defective condition existed and was known to the proprietor before the accident, or that it had existed for so long a time theretofore as to charge the proprietor with notice and to

have afforded him a reasonable opportunity to repair the defect."

In the *Broadston* case, the plaintiff, having business as a customer with the credit manager of the store, was directed to his desk, situated in a gallery about ten feet above the main floor and reached by a stairway. After transacting her business, she turned to descend the stairway and took one step down with her right foot, but, in attempting to take the next step, the heel of her left shoe, she alleged, was twisted in the carpet on the floor of the gallery near the head of the stairway, causing her to trip and fall. The plaintiff recovered in the district court, and the judgment was reversed in this court. Several witnesses for the defendant testified that the carpet on the stairway, extending for a short distance beyond the head of the stairs into the gallery, was practically new, without holes or defects, and was securely tacked down. The court said (p. 607):

"The record in the instant case discloses no evidence either that the carpet was defective before the accident or that any such condition was or could, by any principle of implied notice, have been within the knowledge of the defendant. * * * The utmost that could be inferred from the plaintiff's testimony is that when her heel caught in the carpet a defect then developed, or made itself manifest, that had been theretofore latent or concealed.

"The principle followed by the authorities cited is that, in the absence of actual knowledge of the alleged defect on the part of the proprietor, it must have existed so long before the accident that, if reasonable care had been exercised in inspecting the premises, it would have become apparent, in which event it would have been negligence not to repair it. * * * Her (plaintiff's) evidence, in our opinion, fell short of the proof required to establish negligence on the defendant's part in permitting a carpet which it knew, or by reasonable care would have known, to be defective to remain on the stairway or gallery."

Defendant also cites *Sokolof v. First Nat. Bank,* 122 Neb. 892, 240 N. W. 547, in which the court stated (p. 893):

"There is no evidence that any servant, or other person acting for or on behalf of defendant, placed, or caused to be placed, any soap on the floor of the lobby (the plaintiff had entered the lobby of the bank building and fallen on a wet and soapy floor) ; neither is there any evidence from which such fact could be reasonably inferred; nor is there any evidence that, if soap was upon the floor, any officer, agent or employee of defendant had any knowledge thereof until the time of the accident."

Defendant cites *Thompson v. Young Men's Christian Ass'n, supra,* wherein the court reaffirmed the law as stated in *Broadston v. Beddeo Clothing Co., supra.* The burden of proof was therein stated: "Where a recovery is sought for personal injury sustained by an invitee in falling upon the steps of a building, on the ground that the owner of that building was negligent in permitting water to accumulate on one of those steps, the burden is upon the plaintiff to prove that said condition existed and was known to the owner before the accident, or that it had existed for so long a time theretofore as to charge the owner with notice and to have afforded him a reasonable opportunity to remove it." The court said (p. 847) that the plaintiff "must prove, unless the evidence shows the condition existed and was known to the association, either that the latter had caused the condition or that it had existed a long enough time prior to the accident to charge its servants with notice to afford them a reasonable opportunity to remedy it. * * * In other words, the association had no knowledge of the water being there, had not itself caused it to be there, and the time that it had been there was too short to charge the association with notice and to afford it a reasonable opportunity to remedy that condition. *Broadston v. Beddeo Clothing Co.,* 104 Neb. 604; *Schnatterer v. Bamberger & Co.,* 81 N. J. Law, 558, 34 L. R. A. n. s. 1077; *Chick v. Gilchrist Co.,* 208 Mass. 183."

Analyzing the evidence, we find that the floors of the defendant's store were generally scrubbed in the early morning by its servants. The scrubbing was completed by

the time the store opened at 9 a. m. Plaintiff stated that a spot of soapy water, about the size of a small plate, was evident at the place where she fell. There would seem to be a connection between such spot of soapy water and the scrubbing of the floor, in relation to time. Apparently, there would be no other way to account for this spot of soapy water or oily substance on the floor. The soapy water would have been on the floor at least from the time that the store opened until the plaintiff entered the store at 9:30 or a little thereafter.

As said in *Glenn v. Grant Co., supra,* generally, "What constitutes due care of an inviter is always determined by the circumstances and conditions surrounding the transaction under consideration." Therefore, it would seem that the employees of a large department store would necessarily ascertain if reasonable care had been exercised in inspecting the premises and whether or not the floors were in a reasonably safe condition for invitees to enter and pass over them in the course of their shopping. Reasonable time is disclosed by the evidence in this case to have elapsed for the agents and servants of the defendant to have had knowledge of the condition of the floor and to have ascertained the facts in respect to the floor.

We believe the evidence shows that at the place where the plaintiff fell there was soapy water. Shortly after the accident plaintiff's husband, in examining plaintiff's shoes, found a soapy and oily substance and scuff marks on the shoes. It is true that the floorwalker stated the place where plaintiff fell was dry, and plaintiff's husband, upon examination, stated it was dry, but such testimony would merely controvert plaintiff's testimony on this issue. The size of the wet spot would, in fact, make it less liable to be seen by the invitee, and, as far as falling was concerned, it would be just as dangerous in a great many respects as a larger spot. There is no doubt that plaintiff received a fall at the place stated, and the manner in which she fell indicates clearly that she must have slipped. Although no one saw her fall, yet she was picked up, placed in a chair, a nurse called, and

plaintiff was taken to the emergency room, and later examined by defendant's physician. The case before us is distinguished from *Broadston v. Beddeo Clothing Co., supra, Thompson v. Young Men's Christian Ass'n, supra,* and other cases cited, in that in the instant case the circumstances point to the fact that the condition complained of was created by the defendant. The facts in this case bring it within the doctrine of actionable negligence. *Glenn v. Grant Co., supra,* and cases therein cited.

This court held in *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163: "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence."

Keeping in mind this rule and the reasons given in this opinion, we believe that the facts in the instant case warrant submission of the cause to the jury.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.