GRACE TITE, APPELLEE, v. OMAHA COLISEUM CORPORATION, APPELLANT.

12 N. W. 2d 90

FILED DECEMBER 3, 1943. No. 31595.

*Kennedy, Holland, DeLacy & Svoboda,* for appellant.

*Swarr, May & Royce,* contra.

Heard before SIMMONS, C. J., PAINE, CARTER, CHAPPELL, and WENKE, JJ., and POLK and NUSS, District Judges.

POLK, District Judge.

This is an action for personal injuries received by plaintiff and appellee while attending a hockey game being conducted by the defendant and appellant in the city of Omaha, Nebraska. On trial the case was submitted to a jury. From a judgment in favor of plaintiff and appellee and an order overruling a motion for a new trial defendant and appellant prosecutes an appeal.

The record shows that appellee, together with her husband and another married couple, attended the hockey game on the evening of January 1, 1941. It was an amateur exhibition with no reserved seats being sold. The appellee's party purchased tickets that entitled them to sit in any unoccupied seats in the coliseum, including the box seats next to the playing arena. They were not ushered to any particular seats and selected seats in one of the boxes. There was a wire screen in front of the seats at the end of the playing arena but none in front of the box and side seats. Around the arena there was erected a board wall about three and one-half feet high. Appellee's party occupied these box seats immediately behind this wall and during the second game a flying puck from the playing arena struck appellee in the face, causing injuries for which she seeks recovery in this action.

In the petition negligence is attributed to the appellant

for its failure to erect a screen in front of the box seats and its failure to give any warning of the danger of pucks leaving the field of play and going into the stands. The appellant answered, alleging freedom from any negligence and contributory negligence on the part of the appellee, and further alleged that the rink with all appurtenances were standard in construction and conformed to those in common and general use in all well managed and prudently operated coliseums in the country; and that appellee's injury was the result of risks and dangers which were incident to the sport and inherent therein, that said risks and dangers were open, apparent and obvious and in the exercise of ordinary care were, or ought to have been, known to and appreciated by her and they were by her voluntarily assumed.

Appellant assigns error of the trial court in its refusal to direct a verdict in its favor after the close of all evidence, and in the giving of certain instructions on its own motion and its refusal to give certain instructions requested by appellant.

We shall first consider the assigned error of the trial court in its failure to direct a verdict for the appellant. It is the contention of the appellant that inasmuch as the undisputed evidence shows that the playing arena with all the equipment, including the arrangement of seats and screens, were in strict conformity with the customs and usages of hockey arenas throughout the country, there was no evidence of negligence and the case was improperly submitted to the jury. Appellee insists that the failure of appellant to erect a screen in front of the box seats or to give any warning of the danger of pucks leaving the field of play and going into the stands was evidence of negligence on the part of the appellant, and therefore the case was properly submitted to the jury, and that the hockey business, itself, cannot determine the standards of due care in the erection and operation of an arena, and that the question as to whether the arena in question was erected and conducted by the appellant free from negligence was a question for the jury under all the facts and circumstances of the case. In addition

appellant insists that under the defenses of contributory negligence and assumption of risk as heretofore set forth the appellee could not recover and that for all of the foregoing reasons the trial court should have directed a verdict for the appellant.

An operator of a place of public amusement is not an insurer of the safety of his patrons, but he owes them the duty which under the particular circumstances is ordinary and reasonable care for their safety. Such duty requires him to provide reasonable protection from and to warn his patrons of any dangers known to him, or which he should know in the exercise of reasonable care, and not known to his patrons, unless such dangers are observable to them in the exercise of reasonable care for their own safety. Shearman and Redfield, Negligence (Rev. ed.) sec. 779; 2 Restatement, Torts, sec. 343; 38 Am. Jur. 754, sec. 96; *Welsh v. Jefferson County Agricultural Society,* 121 Neb. 166, 236 N. W. 331; *Emery v. Midwest Amusement & Realty Co.,* 125 Neb. 54, 248 N. W. 804; *James v. Rhode Island Auditorium, Inc.,* 60 R. I. 405, 199 Atl. 293; *Ivory v. Cincinnati Baseball Club Co.,* 62 Ohio App. 514, 24 N. E. 2d 837; *Danielson v. Reeves,* 211 Minn. 491, 1 N. W. 2d 597; *Hudson v. Kansas City Baseball Club, Inc.,* 349 Mo. 1215, 164 S. W. 2d 318, 142 A. L. R. 858; *Lemoine v. Springfield Hockey Assn., Inc.,* 307 Mass. 102, 29 N. E. 2d 716; *Shanney v. Boston Madison Square Garden Corporation,* 296 Mass. 168, 5 N. E. 2d 1; *Waddel's Admr. v. Brashear,* 257 Ky. 390, 78 S. W. 2d 31, 98 A. L. R. 553.

Is this standard of care as outlined by the foregoing authorities fulfilled as a matter of law by evidence that the hockey rink was constructed and operated in conformity with the custom and methods of prudent operators in the business throughout the country? In other words is this standard of care fixed exclusively by the practices of prudent operators, or are these practices evidence to be used by the jury together with other evidence in determining the question of due care? Appellant cites a number of Nebraska cases which, it insists, show that this state has adopted

the position that the standard of care is fixed by the custom and usages of the business, and that a jury is not free to fix a standard different than that established generally by prudent operators in the particular business. These cases are: *Missouri P. Ry. Co. v. Lewis*, 24 Neb. 848, 40 N. W. 401; *Omaha Bottling Co. v. Theiler*, 59 Neb. 257, 80 N. W. 821; *O'Neill v. Chicago, R. I. & P. Ry. Co.*, 66 Neb. 638, 92 N. W. 731; *Weed v. Chicago, St. P., M. & O. Ry. Co.*, 5 Neb. (Unof.) 623, 99 N. W. 827.

In the case of *Missouri P. Ry. Co. v. Lewis, supra,* a recovery was denied an injured employee for the reason that no evidence was introduced to show that blocking switches was such a safeguard as was generally recognized by those engaged in operating railroads. It was held in the case of *Omaha Bottling Co. v. Theiler, supra,* that where it was shown that the injury to an employee was due to excessive pressure in a bottle, rather than providing a screen for protection, that the duty an employer owed his employee was that "care required by the usual and ordinary usage of the business." In the case of *O'Neill v. Chicago, R. I. & P. Ry. Co., supra,* it was held that the company was not liable to one of its employees for an injury received from an unblocked guard rail for mere error of judgment in furnishing structures and appliances for the use of its servants in the prosecution of its business. The court said: "The servant assumes the risks incident to the nature of his employment. Among these is the danger of error of judgment by his employer in the choice of tools and mechanisms with which his tasks are to be performed, * * * ." In *Weed v. Chicago, St. P., M. & O. Ry. Co., supra,* the court said an allegation of negligence against the company could not be maintained by an injured employee for the reason that the car on which he was injured "was constructed, equipped, and had all the appliances that cars of its class have on all railroads."

In Volume 68, American Law Reports, page 1400, there appears an exhaustive note under the title "Custom as a Standard of Care." In this note cases involving master

and servant and other negligence cases are examined and discussed. As a preliminary statement the author says on page 1401: "Where the question does not arise between master and servant, the usual holding is that conformity to custom is not, in itself, the exercise of due care." And again on page 1416 he says: "While the authorities make little attempt expressly to distinguish cases arising between employer and employee from other negligence cases, the cumulative effect of the decisions, as a whole, is to emphasize general practices as being of more importance in determining the liability of the master to his servant, than in determining the liability of other persons, for alleged negligence. The proposition that the master is not liable if he furnishes appliances of a sort in general use, and conducts his business in a manner conforming to the usage of others engaged in the same business under similar circumstances, is clearly traceable in many of the cases to the basic rule that the servant assumed the ordinary risks of his work, such ordinary risks evidently being deemed by many courts to be those usual to the employment."

This recognition of the basis of the rule in master and servant cases will be found in the quoted language from *O'Neill v. Chicago, R. I. & P. Ry. Co., supra*. There is sound reason for this recognition. A duty to a servant, familiar with the construction and operation of appliances used in his work, is obviously different from that duty owed to the public generally.

While the rule that custom and usages of business establish a standard of care has been recognized in other states outside the field of master and servant cases, it has not, to our knowledge, been recognized in this state. As a matter of fact this court in the case of *Albrecht v. Morris*, 91 Neb. 442, 136 N. W. 48, refused to hold that the establishing of a custom of leaving trenches for water pipes open under certain conditions would constitute a complete defense to an allegation of negligence. The position taken by the courts in both master and servant and negligence cases is found in 38 American Jurisprudence, 680, sec. 34, where it is said:

"Although there is considerable uncertainty in some of the decisions as well as some authority directly in conflict, the rule which has been supported generally by most of the authorities and which appears to be sound is that conformity to custom is not in itself the exercise of due care.ₐ The weight of authority supports the view that since negligence is the failure to do that which an ordinarily prudent man would do, or the doing of that which an ordinarily prudent man would not do, under the same circumstances, an ordinary custom, while relevant and admissible in evidence on the issue of negligence, is not conclusive, especially where the custom is clearly a careless or dangerous one."

The majority view is succinctly stated in the well known case of *Texas & P. Ry. Co. v. Behymer*, 189 U. S. 468, 23 S. Ct. 622, where it is said: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

In the case of *Thurman v. Ice Palace*, 36 Cal. App. 2d 364, 97 Pac. 2d 999, it was held that even though the evidence showed that the Ice Palace had constructed and equipped a skating rink in conformity to the general custom and usage prevailing throughout the United States and Canada, the question of whether the company was negligent in not providing either notices warning patrons of danger from flying pucks or screens to protect the spectators in case a puck should be driven above the railing surrounding the rink is one of fact for the jury. The same position is taken by the court in the case of *James v. Rhode Island Auditorium, Inc.*, *supra*, where the defendant argued that it had discharged its full duty when it constructed its hockey rink like other hockey rinks in various cities. The court said: "We do not agree with this contention. The practice in other places and the opinion of the expert in this case are circumstances entitled to proper consideration as evidence, but they are not conclusive."

In view of the holdings in the California and Rhode Island cases and of the courts generally in all classes of cases and

the apparent reason given for the holding in the Nebraska case of *O'Neill v. Chicago, R. I. & P. Ry. Co.*, *supra*, to wit, that the servant assumes the risks incident to the nature of his employment, we are constrained to hold that the rule should not be extended to this case.

We conclude that evidence that an operator constructed and operated a hockey rink in conformity with the custom and approved methods of prudent operators in the business did not conclusively fix the standard of care of the operator as a matter of law, but is evidence only which the jury may consider with other evidence, under proper instructions, in determining whether due care was exercised by the operator, and that the issue of whether or not the appellant was negligent was properly submitted to the jury.

In its answer the appellant has pleaded the defenses of contributory negligence and assumption of risk. The appellee has joined issue with the answer and the case was tried and submitted to the jury on all defenses without objection. In treating the defenses of contributory negligence and assumed risk in relation to the motion to direct a verdict it can be said that these defenses in this case overlap and any conclusion reached herein pertaining to the conduct of the appellee applies with equal force to each defense. We have recently held in the case of *Landrum v. Roddy*, 143 Neb. 934, 12 N. W. 2d 82, that the defense of assumption of risk is not inconsistent with the defense of contributory negligence and that the two defenses may arise under the same state of facts. The position of the appellant is that under either or both defenses appellee's conduct was such that a verdict should have been directed against her. Under both defenses appellant insists that appellee placed herself and remained in a position of danger after she knew, or in the exercise of ordinary care should have known, that she was in a dangerous situation which required some affirmative act on her part for her safety.

A spectator at a hockey game assumes the risk of such dangers as are incident to the playing of the game of which he had knowledge or which should have been obvious and

apparent to a reasonable and prudent person under the circumstances. An operator owes the spectator reasonable care for his safety but as a concomitant to this duty the spectator owes the duty to protect himself against known dangers or such dangers incident to the game as would be apparent to a reasonable person in the exercise of due care. 38 Am. Jur. 845-848, secs. 171-173; 2 Restatement, Torts, sec. 466; Shearman and Redfield, Negligence (Rev. ed.) sec. 135; *Edwards v. Kirk*, 227 Ia. 684, 288 N. W. 875; *Lemoine v. Springfield Hockey Assn., Inc., supra; James v. Rhode Island Auditorium, Inc., supra.*

Appellant refers to a number of cases in which spectators at baseball games were denied recovery, and, by analogy after reviewing the manner in which the playing arena of both games are constructed, the way the games are played, and the dangers incident thereto, contends that spectators at hockey games should be treated in law as occupying similar positions to spectators at baseball games. In other words, that the games of baseball and hockey and their incidental dangers to spectators are equally familiar to the attending public and that the mutual duties of operator and patron are in legal contemplation the same in both games. Inferentially the position is taken that the law obtaining in baseball cases is unique for this particular game, and should likewise be applied to the game of hockey. A few of the leading baseball cases, including those cited by the appellant are: *Keys v. Alamo Baseball Co.*, 150 S. W. 2d (Tex. Civ. App.) 368; *Williams v. Houston Baseball Assn.*, 154 S. W. 2d (Tex. Civ. App.) 874; *Hudson v. Kansas City Baseball Club, Inc., supra; Brisson v. Minneapolis Baseball & Athletic Assn.*, 185 Minn. 507, 240 N. W. 903; *Wells v. Minneapolis Baseball & Athletic Assn.*, 122 Minn. 327, 142 N. W. 706; *Ivory v. Cincinnati Baseball Club Co., supra; Crane v. Kansas City Baseball & Exhibition Co.*, 168 Mo. App. 301, 153 S. W. 1076.

What is this distinguishing feature which in appellant's opinion exists in baseball cases? An analysis of these cases reveals a definite trend of the courts to deny recovery for

injuries received by spectators from balls going into unscreened stands from the playing field. The basis of the denial seems to be placed on the conduct of the spectator and culpability on his part. It seems to be predicated on the principle that a spectator with knowledge of the dangers incident to the playing of the game assumes the risk of being injured thereby, and this without regard to any negligence on the part of the operator. In those cases, however, in which the spectator denied actual knowledge of the dangers a recovery was not permitted because it was held that the circumstances surrounding his attendance were such and the game of baseball was so commonly known that knowledge was imputed to him and he was held to have assumed the hazards of the game. Seemingly the tendency of the courts is to hold that in all baseball cases involving injuries to spectators from balls going into the unscreened stands from the playing field the question of knowledge, either actual or constructive, is one of law for the courts. While in some cases there was evidence that would show knowledge, the courts in deciding that the spectator had knowledge as a matter of law emphasized the fact that there is a common knowledge of baseball and its incidental dangers. This common knowledge seems to have been the deciding factor in causing the courts to view the question as one of law for the court rather than one of fact for the jury. The distinction which appellant perceives in baseball cases does not show a different rule of substantive law as respects the duties of the operator or spectator. It merely shows establishment of knowledge of danger which precludes recovery is arrived at in a different manner.

Should this doctrine of common knowledge of baseball and the dangers incident to the playing of the game be extended to hockey cases? This question has been considered and answered in very few cases. They are cited in the briefs and are as follows: *Hammel v. Madison Square Garden Corporation*, 156 Misc. 311, 279 N. Y. Supp. 815; *Ingersoll v. Onondaga Hockey Club, Inc.*, 245 App. Div. 137, 281 N. Y. Supp. 505; *Elliott and Elliott v. Amphitheatre Ltd.*,

(Man.) (1934) 3 W. W. R. 225; *Shanney v. Boston Madison Square Garden Corporation, supra; James v. Rhode Island Auditorium, Inc., supra; Lemoine v. Springfield Hockey Assn., Inc., supra; Thurman v. Ice Palace, supra; Thurman v. Clune,* 51 Cal. App. 2d 505, 125 Pac. 2d 59.

The New York court has announced in two cases that it fails to find any distinction, in so far as the mutual duties of operators and spectators are concerned, between the games of baseball and hockey, and has followed the rule found in baseball cases heretofore discussed.

In the case of *Ingersoll v. Onondago Hockey Club, Inc., supra,* in an opinion by a divided court, we find the following language: "It seems to me that appellant in attending a hockey game occupied precisely the same status as a spectator at a baseball game and that the same rules should be applied in each instance. There was no obligation on the part of respondents to protect appellant against a danger incident to the entertainment which any reasonable spectator could foresee and of which she took the risk. The risk of being hit by a baseball or by a puck at a hockey game is a risk incidental to the entertainment and is assumed by the spectators."

In the Canadian case of *Elliott and Elliott v. Amphitheatre Ltd., supra,* recovery was denied the plaintiff because it was shown that he had played hockey for a number of years and must be held to have a thorough knowledge of the risks assumed by the public. Actual knowledge having been found to exist, this case is of little value in the instant case where the question of knowledge is a controverted issue.

The states of Massachusetts, Rhode Island and California have denied the applicability in hockey cases of the rule followed in baseball cases. In the case of *Shanney v. Boston Madison Square Garden Corporation, supra,* the court in referring to the New York hockey cases said: "We are not inclined to agree with the two decisions last mentioned. Cases as they arise must be decided by the application of general principles to the particular facts shown and not by arbi-

trary classification according to the names of various games."

In the case of *James v. Rhode Island Auditorium, Inc., supra,* the court said: "We find considerable difficulty in reaching the conclusion that the average person has a similar knowledge of the risks incident to hockey and to baseball. The games are fundamentally different. In hockey the puck is supposed to be driven *along* the ice towards the goal at each end of the playing surface while in baseball the ball is pitched through the air to be batted out toward the playing field, far or near, on the ground or in the air, according to the skill of the batter or to chance. The average person of ordinary intelligence in this country is so familiar with the game of baseball that it is reasonable to presume that he appreciates the risk of being hit by a pitched or batted ball without being specially warned of such danger. Therefore, a spectator at this nationally known game may ordinarily be held to have assumed such a risk. It is going quite far to assume, however, that the average person has the same knowledge respecting the risk of being hit by a flying puck in a hockey game played in a specially constructed rink, which, according to the testimony of the defendant's expert, is not yet fully standardized in all details. Furthermore, the game of ice hockey in rinks is of rather recent origin in this country. The dangers incident to the game may be or become known to those who attend such performances, but we have great difficulty in believing that those dangers are a matter of common knowledge in the community."

And again in the case of *Thurman v. Ice Palace, supra,* we find the following language: "The rule which has apparently uniformly been applied to baseball cases is, we believe, inapplicable to ice hockey games, for the reason that the average person of ordinary intelligence in this country is familiar with the game of baseball and it is reasonable to presume that such person appreciates the risk of being hit by a pitched or batted ball without being specifically warned of such danger. Hence a spectator at this nationally known

game may ordinarily be held to assume such risk. However, the average person does not have the same knowledge respecting ice hockey or the risk of being hit by a flying puck while observing such a game."

Appellant attempts to distinguish the instant case, where it appears that appellee had attended a hockey game at a previous season, and one game and a part of another on the evening she was injured, from the cases in Massachusetts, Rhode Island and California, by pointing out that in these cases, the persons injured were attending games for the first time. We do not think this position is well taken. It will be noted that in the New York case of *Ingersoll v. Onondaga Hockey Club, Inc., supra,* cited by appellant, a recovery was denied even though the plaintiff there was attending her first hockey game, the court saying that this did "not change the rule of liability so far as respondents are concerned."

It would seem that the courts of Massachusetts, Rhode Island and California have refused to follow, in hockey cases, the "common knowledge" rule found in baseball cases because of the apparent difference in the knowledge of the games and the dangers incident thereto.

In view of the novelty of the game of hockey in this state, and the acquaintanceship and experience of appellee with the game and its incidental dangers, as shown by the record, we feel that the question of her knowledge of the game and its dangers, and her entire conduct as it related to the issue of dereliction of duty on her part was a matter for the consideration of the jury.

We hold that the trial court did not commit error in overruling appellant's motion to direct a verdict in its favor. ·

The remaining assignments of error relate to the giving of certain instructions by the trial court and its refusal to give certain requested instructions of the appellant. Assignments II, III and IV complain of the failure of the court to properly instruct the jury on the duties of the appellee under the defenses of contributory negligence and assumption of risk. The court told the jury in instruction No. VI

that the appellee "did not assume the risk of being struck by a flying puck, unless you find from the evidence that plaintiff knew and appreciated the danger of being struck by such puck." This is not a complete statement of her legal duties. The jury should have been informed in substance that a spectator assumes the risk of dangers incident to the playing of the game which she knew or which a reasonably prudent person under the circumstances should have known or foreseen. The duties of the appellee, under the defense of contributory negligence, likewise should have been defined. In this connection the jury should have been told, in substance, that her duties required her to exercise reasonable care in protecting herself against known dangers, if any there were, and such dangers incident to the playing of the game that should have been known and appreciated by a reasonable person in the exercise of due care. This court has recently held in the case of *Grantham v. Watson Bros. Transportation Co.*, 142 Neb. 367, 9 N. W. 2d 157, that "Want of ordinary care, and not knowledge of danger, is the test of contributory negligence." We hold that the failure to properly instruct the jury on the duties of appellee as outlined was prejudicial error.

In instruction No. XI the court instructed the jury on the law under the comparative negligence statute. The jury were told in this instruction and a supplemental instruction that if the plaintiff's negligence was slight in comparison with the negligence of the defendant the plaintiff could recover. In instruction No. XI, however, in addition to the foregoing, the jury were told that the plaintiff could recover if her negligence was slight and the defendant's negligence was gross in comparison. As to the correctness of instruction No. XI and the supplemental instruction we have serious doubt. However, in view of the fact that a retrial must be had for errors above set forth, we do not feel required to pass on this matter.

The court did not err in refusing to give appellant's requested instruction No. V. We think instruction No. VII given by the court correctly submitted to the jury the law

relating to evidence of custom and usages of the business.

For the errors of the trial court in giving instruction No. VI and its failure to correctly instruct on the duties of the appellee to which the appellant was entitled under its defenses, the judgment of the trial court is reversed and the cause remanded for a new trial in harmony with the views herein expressed.

REVERSED.