**SURFACE v. SAFEWAY STORES, Inc.**
No. 13697.

United States Court of Appeals
Eighth Circuit.
Sept. 1, 1948.

Rehearing Denied Sept. 21, 1948.

See also, D.C., 7 F.R.D. 478.

Jack M. Pace and Dwight C. Perkins, both of Lincoln, Neb. (Mockett, Davies, Pace & Perkins, of Lincoln, Neb., on the brief), for appellant.

Flavel A. Wright, of Lincoln, Neb. (Cline, Williams & Wright, of Lincoln, Neb., on the brief), for appellee.

Before THOMAS, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

Ada B. Schumacher, a customer, 73 years of age, fell on the floor of one of the self-service grocery stores of The Safeway Stores, Inc., in Lincoln, Nebraska, and was injured. She claimed that the floor was slippery, from having been mopped some minutes before, and that this was the cause of her fall. She sued Safeway in negligence, under Nebraska law, but died before the case was tried, and the action was revived in the name of her Administrator. On a trial of the merits, the court at the close of the plaintiff's evidence directed a verdict for Safeway and dismissed the action, on the ground that Mrs. Schumacher before her fall had knowledge of the condition of the area, from having seen the mopping done, and that her act in stepping onto this part of the floor was therefore such contributory negligence as would bar a recovery. The Administrator has appealed.

Plaintiff's evidence on the conditions and events of the accident consisted of the testimony of Mrs. Gans, an employee of the store, and a deposition of Mrs. Schumacher which had been taken by the defendant some months after the accident.

Mrs. Gans's testimony showed that, during a mid-forenoon lull in the business, she had undertaken to mop the floor behind the checking counter at which she worked. This was part of her regular duty. The checking counter, where purchases of customers were checked, paid for and sacked, was a "U" shaped structure, approximately 10 feet in length, with a 44-inch opening at the end. On each side of the opening stood a magazine rack, extending out a foot beyond the ends of the counter. Mrs. Gans mopped the floor behind the counter and to the outer edge of the magazine racks.

She testified that she used a sponge mop and a bucket of water in which she had dissolved some ordinary soap powder. She dipped the mop in the water and ran it over a part of the floor; then she dipped it again and squeezed the water out of it by pressing it down on a perforated rack in the

bucket, and once more ran it over the area; and she repeated this latter operation, thus going over the boards with the mop three times. She said that after these operations there was no water on the floor and no soap film or other deposit, and the boards were not wet or slippery but merely "damp to the feel" and "a little darker than the rest of the store, being damp."

Mrs. Gans was mopping the space between the magazine racks, she said, when Mrs. Schumacher entered the store. The two were acquainted, and Mrs. Schumacher came over to the checking counter to visit before commencing her shopping. Mrs. Gans went on finishing the mopping operations, and Mrs. Schumacher made some comment about the mop, which apparently was of a type that she had not previously seen. After chatting for a few minutes, Mrs. Schumacher moved away to select her purchases, and Mrs. Gans took the mop and bucket to the rear of the store. As Mrs. Gans was returning a few minutes later, she observed that two women were helping Mrs. Schumacher toward a table near the checking counter. Mrs. Schumacher said to her, "Alice, I slipped on your floor and fell", to which Mrs. Gans replied, "Why, Mrs. Schumacher, you stood right there and watched me wash the floor and you knew it was damp."

In her deposition, Mrs. Schumacher testified that only 5 or 6 minutes had elapsed from the time she entered the store until she fell; that in the brief interval that she visited with Mrs. Gans at the checking counter, she saw the latter rub a bar of yellow soap on the mop in going over the area between the magazine racks; that she "didn't pay any attention" to how the floor "looked" after the mopping was completed; that after her conversation with Mrs. Gans she went over to a display table to pick up some cheese, and thereafter to the vegetable stand, and then started back to the checking counter to pay for her purchases; that as she came to the checking counter she saw some candy bars on it and decided to get two; that "I just moved to get those candy bars and that was all I knew—I just went down"; that "I don't know whether I slipped; * * * my feet went out from under me, both of them,

and I sat right down"; that as she started to step between the magazine racks, "I fell just where I stepped"; that "there was a mark where my heel kind of slid", which "was right there where I fell"; that after she fell she looked at the floor and "I thought it was dry"; and that there were no "wet spots or anything on the floor at that time" that she observed.

The trial judge in directing a verdict stated that he was doing so solely on the ground that in his opinion Mrs. Schumacher had been guilty of more than slight contributory negligence as a matter of law and that there therefore could be no recovery.

The Nebraska statute on contributory negligence, Neb.Rev.St.1943, § 25-1151, provides: "In all actions brought to recover damages for injuries to a person or to his property caused by negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

The Nebraska Supreme Court has held that, while under this statute the question of contributory negligence ordinarily is for the jury, there nevertheless is a duty to withdraw it from the jury's consideration, if no room reasonably exists on the evidence and the legitimate inferences therefrom for more than one conclusion. Zimmer v. Brandon, 134 Neb. 311, 278 N.W. 502. And so, under Nebraska law, the court in a negligence action is required to direct a verdict for the defendant, if the evidence shows beyond any reasonable dispute that the plaintiff has been guilty of contributory negligence and that such negligence is more than slight in its relationship. Thomison v. Buehler, 147 Neb. 811, 25 N.W.2d 391, 393. But if on all the evidence, reasonable minds might fairly differ in their conclusion as to

the existence of contributory negligence or as to its degree being more than slight in the circumstances, the question is for the jury to determine. Frazier v. Anderson, 143 Neb. 905, 11 N.W.2d 764, 767.

■ The effect of the trial court's ruling, that Mrs. Schumacher was guilty of contributory negligence more than slight in stepping onto the area between the magazine racks, when she had witnessed the mopping done, necessarily was to hold that she was guilty of such negligence within any condition that the floor could be found from the evidence to have been in at the time of the accident. But if the floor on ordinary observation appeared to be dry, as could be found from Mrs. Schumacher's testimony to be the fact, we do not believe that it would be possible to declare as a matter of law that reasonable-minded men would all agree that, because she had seen the mopping done, Mrs. Schumacher was not acting as a customer of ordinary prudence in stepping onto the area to get some goods, when the mopping operations never had left the boards wet but merely damp, when the operator of the store had allowed the space to remain open as being safe for regular use, and when, on the evidence, up to approximately 6 minutes could be found to have elapsed since the mopping was done, with the floor then looking dry.

It seems to us therefore that it was error to direct a verdict on the basis of Mrs. Schumacher's contributory negligence. And even if the evidence should have been conclusive that the floor at the time still actually was "a little darker than the rest of the store, being damp" (which the evidence was not, although the trier of the fact might find that to have been the situation from the circumstances, including Mrs. Gans's remark to Mrs. Schumacher immediately after the accident), we think that this similarly would not have entitled the court to hold as a matter of law that Mrs. Schumacher had been guilty of contributory negligence more than slight in not anticipating the probability of her slipping and falling, as she undertook to approach some goods that she wanted, in the light of the facts that the operator of the store had created the condition and held it out as being safe for regular use, that up to 6 minutes could be found on the evidence to have elapsed since the mopping was done, and that Mrs. Schumacher had testified that to her observation the floor appeared dry.

In each of these situations, on the circumstances of the evidence, whether Mrs. Schumacher was guilty of contributory negligence, and, if so, what was its degree, were in our opinion questions for the jury.

■ Mere familiarity with the physical condition which causes a plaintiff's injury will not alone make him guilty of contributory negligence in what he does or fails to do. It is the character of his action or inaction, in relation to the appreciation which a person of ordinary prudence could be expected to have in the situation of the peril of the condition, upon which his contributory negligence depends. 38 Am.Jur., Negligence § 188, p. 864. The Nebraska court has put it thus: "Want of ordinary care, and not knowledge of the danger, is the test of contributory negligence." Grantham v. Watson Bros. Transportation Co., 142 Neb. 362, 367, 6 N.W.2d 372, 9 N.W.2d 157, 158, quoting from previous cases.

■ It is true that voluntary exposure to an obvious danger which reasonably can be avoided will ordinarily constitute contributory negligence as a matter of law. Kerwin v. Thompson, Belden & Co., 110 Neb. 251, 192 N.W. 692. But in general, the attention which one must pay to his surroundings, in governing his actions with respect to them, is not a legal absolute and will vary with the type of the situation and its circumstances, including the relationship that is involved. Restatement, Torts, § 464, Comment c; Malolepszy v. Central Market, Inc., 143 Neb. 356, 9 N.W.2d 474.

■ Among the important factors therefore on the question of contributory negligence are the nature of the preparations which the defendant properly may be expected to make for the plaintiff's safety in the immediate relationship, and the extent to which the plaintiff can assume in the particular situation that this duty is being performed. Thus, "one entering a store,

theatre, office building or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even business visitors." Restatement, Torts, § 343, Comment e.

Also, as the Nebraska court has observed, "it would seem that the employees of a large department store would necessarily ascertain if reasonable care had been exercised in inspecting the premises and whether or not the floors were in a reasonably safe condition for invitees to enter and pass over them in the course of their shopping." Rankin v. J. L. Brandeis & Sons, 135 Neb. 86, 280 N.W. 260, 264. Still further, in the language of that court, a customer of a store who "passes along aisles, between counters, surrounded by merchandise displayed and designed by the proprietor to attract and hold his attention * * * might not be required to exercise the same or an equal degree of care to avoid obstacles to safety as would be required of the pedestrian upon the open street." Glenn v. W. T. Grant Co., 129 Neb. 173, 260 N.W. 811, 812, 813.

■ In a store invitee relationship, where the customer at the time is absorbed in an immediate shopping activity, we believe that the question of contributory negligence will usually be required to be left to the jury. At any rate, as we have suggested, it does not seem to us that under the Nebraska statute and decisions any such absolute can be said to exist as compels a holding that a customer of a self-service grocery, required to move about shelves and display tables to pick up the goods that she desires, and expected to be lured by the sight of other merchandise, is guilty of contributory negligence (and more than slight) as a matter of law, in going onto an area of the floor containing goods to which she is attracted, merely because she has seen the area mopped and left slightly damp, when the proprietor has kept the space open thereafter for regular use, and, beyond this, some minutes have elapsed since the mopping, and, still further, there is testimony to the effect that the floor appeared to be dry. Under these conditions, we think it could not be concluded as a matter of law that no customer of ordinary prudence would in the situation have undertaken to step onto the area for the purpose of getting goods. The question is in the situation of sufficient debatability at least to entitle a jury to pass on it.

Safeway has argued that, even if it was error to direct a verdict on contributory negligence, the judgment still should be affirmed, on the grounds (1) that no negligence existed in the situation; (2) that the cause of Mrs. Schumacher's fall was wholly speculative; and (3) that the situation was in any event one of assumed risk.

■ But as to the first ground, here also we cannot say as a matter of law that it would be impossible for any one reasonably to conclude that the proprietor of a sizable self-service grocery store has been guilty of any negligence in his duty to his customers, where he has permitted part of the floor to be mopped during customers' hours; where he has left the space open for regular use; and where the condition can be found from the evidence to be one of sufficient dampness to be capable of causing a customer to slip in her shopping pursuits and fall. Cf. Walz v. Paul Helfer, Inc., 286 N.Y. 408, 36 N.E.2d 640, reversing 260 App.Div. 677, 23 N.Y.S.2d 782.

A jury, of course, on weighing the facts, would be privileged to conclude that Safeway was not guilty of negligence in the present situation. Indeed, if it chose to accept one or two of the statements in Mrs. Schumacher's deposition with naked literality, rather than to accord effect to the other parts of plaintiff's evidence and the legitimate inferences therefrom, it would probably so find. And further, even if it found that Safeway had been negligent, the physical condition which it accepted as the basis of its finding might also lead it to conclude that Mrs. Schumacher had been guilty of such contributory negligence as should bar a recovery. But none of this is material in our present consideration.

■ On Safeway's next contention, that the cause of Mrs. Schumacher's fall was

wholly speculative, we have previously set out Mrs. Schumacher's remark at one point in her deposition, that "I don't know whether I slipped." But this perhaps somewhat casual statement, made several months after the accident, in the course of the taking of her deposition by defendant's counsel, could not be held to be absolutely conclusive, in view of her other statements and testimony. She further said that both her feet went out from under her when she stepped onto the area between the magazine racks, and that she was caused to sit "right down", with alleged injury to her lower spine. On this testimony, the fall was not one where she had pitched forward or tumbled onto her side. And she specifically stated also that "there was a mark where my heel kind of slid."

Beyond this, immediately after the accident, and apparently as part of the res gestae, she had declared to Mrs. Gans, according to the latter's testimony, "Alice, I slipped on your floor and fell." A jury, in weighing the significance of this declaration, as against the statement in the deposition, would be entitled to give consideration to its proximity to the event and to its implication on the cause of the fall, in the setting of the accident, as suggested by Mrs. Gans's immediate evaluation and reaction, "Why, Mrs. Schumacher, you stood right there and watched me wash the floor and you knew it was damp."

On the present state of the record, therefore, we think that there was sufficient to have permitted a jury directly and reasonably to have found that Mrs. Schumacher slipped, and that the dampness of the floor was a proximate factor in the fall. Her remark to Mrs. Gans, her description of her fall and her position, and the visible skid mark on the floor were immediately probative, so that, as the evidence stood, it was not a matter of speculation to leave the question to the jury. There is, at least as yet, nothing to dissolve as a matter of law the natural probative effect of these factors. This is not a situation, such as in Bowerman v. Greenberg, 142 Neb. 721, 7 N.W.2d 711, where the alleged negligence was in no way probatively tied to the fall, and where therefore its operation as a probable cause was wholly a mere speculative possibility.

We likewise think that Safeway was not entitled to a directed verdict on its third contention, that the situation was one of assumed risk. The trial judge announced that his directing of a verdict was "not in any wise based upon that defense" and that "I do not consider that the evidence in the present case is such as mandatorily to require the court to instruct a verdict upon that theory." We agree with this view.

The Nebraska court has held that the doctrine of assumed risk is applicable to negligence actions in that state beyond the master and servant relationship, and that it is independent of the defense of contributory negligence, but that its operation is "strictly limited to the terms" of the maxim "volenti non fit injuria." Landrum v. Roddy, 143 Neb. 934, 12 N.W.2d 82, 83, 149 A.L.R. 1041. In that case the court further said: "The maxim 'volenti non fit injuria' means: If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto." 12 N. W.2d at pages 84, 88.

On the right to a directed verdict for assumed risk, the situation here was under the evidence, first of all, not one where it was possible to declare as a matter of law that such an obviously dangerous condition existed as would not permit Mrs. Schumacher to rely upon Safeway having performed its duty to her and as would reasonably require her not to take any chance on the possibility of an injury except at her own risk. Cf. Tite v. Omaha Coliseum Corporation, 144 Neb. 22, 12 N.W.2d 90, 149 A.L.R. 1164. Since that foundational question was in the situation not one which the court was entitled to settle in defendant's favor as a matter of law, there clearly was no right to a directed verdict on the basis of it. Moreover, as the evi-

dence stood, it would in any event have been a question for the jury whether Mrs. Schumacher had such a comprehension of danger in the situation that her action in stepping onto the mopped area was a willing exposure to a known risk.

What may be the legal situation when the evidence of both parties shall have been fully presented is, of course, not a matter of present thought or expression.

The judgment is reversed and the cause is remanded for further proceedings.