## MORRIS, Plaintiff-Appellee, v. CLEVELAND HOCKEY CLUB, INC., Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21928.   Decided January 8, 1951.

Payer, Bleiweiss, Crow & Mollison, Cleveland, for plaintiff-appellee.

Hauxhurst, Inglis, Sharp & Cull, Cleveland, for defendant-appellant.

(CONN, PJ, CARPENTER and FESS, JJ, of the Sixth Appellate District sitting by designation in the Eighth District.)

### OPINION

By CARPENTER, J.:

During the evening of February 18, 1948, the plaintiff, while attending an ice hockey game at defendant's Arena in Cleveland, was struck above the eye by a flying puck.  Several

bones in his face were fractured and for the resulting damages he was awarded a verdict and judgment for $22,500.00. From that judgment defendant took this appeal on questions of law.

Apparently Ohio has no reported decision dealing with the relationship of an injured spectator of a professional ice hockey game to the management, hence some information about that sport will be in order as a background of this discussion.

As played that night in defendant's Arena, hockey was a rugged game played by professionals as a public entertainment for the profit of the defendant.

The Cleveland players, the Barons, were one of the ten clubs of the American Hockey League. That night they were playing the team representing Philadelphia in that league. A team is usually composed of about seventeen players, but only six are on the ice playing at one time.

There are standard rules and regulations for the equipment and playing. The ice rink is required to be approximately 200 feet long and 85 feet wide. Ten feet from each end in the center is a netted goal. Each team defends one of the goals, and one of its players guards the goal while the other five men defend their goal on the rink and seek to drive the puck into the goal of the opposition. The puck is a hard vulcanized rubber disk one inch thick and three inches in diameter. Each player uses a hockey stick with a long handle and a curved striking blade about fifteen inches long.

A solid board wall 3½ to 4 feet high surrounds the ice rink, its corners are curved some. In this Arena, back of this board wall and rising amphitheater-like were the spectators' seats. There were 33 rows around the whole Arena. Above the board wall at the ends and around the curved corners there was a wire screening about 6 feet high to protect spectators in the seats behind it from flying pucks. The proximity to the goals increased this hazard. Above the board wall on the sides there was no screening or other protection to spectators seated there. In the middle on each side was a space of about two rows of seats, for ten feet, occupied by members of the teams when not on the rink; also a small space to be occupied by players when out of the playing on penalties.

The plaintiff occupied a reserved seat in the row back of the visiting players' section. It was about 6 feet from the board wall. A friend, who had had a season's reservation on that seat, had given him the ticket for that night.

Plaintiff had never witnessed a hockey game and testified that he knew nothing about it. He was a bank clerk and his avocation was music, not sports.

A game of hockey is played in three periods of 20 minutes each, with ten minute intermissions between the periods. The injury to the plaintiff happened in the third period of play. The evidence indicated that the puck which struck the plaintiff came from a point to his right and 15 to 25 feet in front of him where several opposing players were contending over it. The plaintiff did not see it before it hit him. Up to that time in that game no flying puck had been driven over the board wall and into a spectator section. The defendant in no way had warned spectators of the hazard of flying pucks.

The negligence alleged in the petition was that the defendant:

"Failed and neglected to provide a reasonably safe theater or arena for paying spectators attending the hockey contests sponsored by it.

"It failed and neglected to provide and equip the sides of said Arena * * * with wire screening or other screening, mesh or guards to safeguard and protect paying spectators from objects hurled or propelled from the ice.

"It failed and neglected to warn or apprise plaintiff by sign or otherwise of the hazards and dangers to which it was then and there subjecting him.

"It caused, allowed and permitted a hard rubber object or hockey puck to be propelled and hurled against him while he was seated unprotected in its said Arena."

The answer admitted that the accident happened and that plaintiff was injured. It denied that defendant was negligent, and alleged that the plaintiff, by sitting in an unprotected seat when seats at the ends behind the screen were available to him, assumed the risk of injury such as he sustained.

Contributory negligence as a defense was not pleaded. There was evidence that could be construed as raising it, and in the submission of the case to the jury counsel and court then, and counsel now, seem to so treat it and no complaint is made in that respect. As will be later pointed out, defendant only urges that that defense was not properly submitted.

The errors assigned and now urged are the overruling of defendant's motions for judgment at the close of the evidence, and notwithstanding the verdict; in refusing to charge the jury as requested before argument; and in the general charge.

1. On the issue of negligence charged to it, its charges of contributory negligence and of the assumption of the risk,

the defendant contends that the principles applied in the decisions in cases involving injury to spectators in baseball games are applicable here, and under them it was entitled to a judgment as a matter of law. By those principles, as almost universally applied, the owner or management of a professional baseball game is not negligent in failing to screen the spectators' stands, except back of the batter's plate, and that a spectator who occupies a seat in an unscreened section when he could have had one in the screened section and is injured by a foul ball or wild throw is guilty of contributory negligence and assumes the risk of such hazards.

Ohio is generally credited as following this line from the dictum expressed in the opinion in **Cincinnati Baseball Club v. Eno, 112 Oh St 175,** 147 N. E. 86. That is not in the syllabus of that decision but is stated in the opinion, obviously to show its nonapplication to the facts in that case where the plaintiff's injury came from a ball, not thrown or struck in the course of a regular game on the diamond. but by players warming up on the sidelines and but a few feet from the plaintiff in her seat in the stand. Because of that peculiar state of facts, negligence and contributory negligence were jury questions and recovery was sustained.

The first paragraph of the syllabus in that decision states the overall rule as to the duty of management in that game, and in hockey too. It is as follows:

"One who expressly or by implication invites others to come upon his premises must exercise ordinary care to guard them against danger, and to that end he must exercise ordinary care to render the premises reasonably safe for the invitee."

The rule of non-liability in the baseball cases as expressed in the Eno case opinion is based on the defense of the assumption of risk and prevails in most jurisdictions, including Ohio, as expressed in the decisions of the reported decisions of our lower courts. These cases are collected in notes in 142 A. L. R. 868 and in 1 Neg. and Comp. Cases, n. s., 488 and 13 Same, 232.

In a minority of jurisdictions the baseball rule has been applied to similar injuries sustained by spectators in hockey games, and recovery therefor has been denied.

The leading Supreme Court decision in this group is Modic v. City of Evelith, 224 Minn. 556, 29 N. W. 2nd, 453, 15 Neg. Cases, 337. One of the reasons emphasized in that decision is that hockey is so extensively played in that state and has been for so long that its hazards are generally known and understood. Mention is made of the fact that the plaintiff was 37 years of age when injured and had attended hockey games all his life, knew all about how it was played and had

a brother who was a player. The same reasoning was expressed in Elliott and Elliott v. Amphitheater, Ltd. 3 Western Weekly Reports, (King's Bench, Canada, Manitoba), 225. That plaintiff was himself a hockey player.

Another Canadian decision in this group was Gervais v. Canadian Arena Co., 74 Que. S. C. 389. This report is in the French language and was not read by the writer, but plaintiff's brief quotes from it in English and indicates that the court laid emphasis upon the fact that hockey was a common sport there and that that plaintiff was familiar with it.

In New York, its court of last resort has not spoken on this subject, but its lower courts have consistently denied recovery for injuries to hockey game spectators. The reasoning in baseball cases has been followed. This happened in the early decision in Rich v. Madison Square Garden Corp., 149 Misc. 123, 266 N. Y. S. 288. In that game, players collided with each other and against the board wall and the club of one was hurled into the stand and struck the plaintiff. Evidence showed it was such an unusual happening that the management was not bound to anticipate it, hence it was not negligent.

Later cases in this jurisdiction, following this lead, having been:

Hammel v. Madison Square Garden Corp., 156 Misc. 311, 279 N. Y. S. 815; Ingersoll v. Onondaga Hockey Club, Inc., 245 App. Div. 137, 281 N. Y. S. 505.

The evidence herein is that the arenas where these injuries took place have since, in New York State, been provided with screening on the sides for the protection of spectators.

By the great weight of authority as expressed in the following jurisdictions, the differences between the hazards in hockey and baseball games and in the resulting duties of the management and spectators have been recognized. In most of these decisions the reasoning of the courts in the foregoing cited cases has been considered and rejected. In Shanney v. Boston Madison Square Garden Corp., 296 Mass. 168, 5 N. E. 2nd, 1, the plaintiff was attending her first hockey game and was not aware of the danger of flying pucks. The court expressly disagreed with the New York decisions cited above. This decision was cited and followed in Lemonine v. Springfield Hockey Assoc., 307 Mass. 102, 29 N. E. 2nd, 716. That plaintiff had attended hockey games and knew about flying pucks, but he was struck while on a promenade even though it was protected by a screen. The court said:

"His knowledge as to the likelihood of a puck being driven

to the promenade did not rest upon as extensive a basis as that of the defendant. The defendant possessed knowledge accruing from the total of all the games."

In Thurman v. The Ice Palace, 36 Cal. App., 364, 97 Pac. 2nd, 999, the trial court had applied the baseball rule to a hockey game and denied recovery as a matter of law. This was reversed and cause remanded. On retrial, the issues of negligence, contributory negligence and assumption of the risk were submitted to the jury, which found for the defendant and the judgment was affirmed. Thurman v. Clune, et al, 51 Cal. App. 2nd, 505, 125 Pac. 2nd, 59.

This decision was followed in Shurman v. Fresno Ice Rink. Inc. 91 Cal. 2nd, 469, 205 Pac. 2nd, 77. Notwithstanding many posted signs by the management warning of the danger of flying pucks, the court said a jury question was presented.

Fite v. Omaha Coliseum Corp., 144 Neb. 22, 12 N. W. 2nd, 90, speaks for that state.

In James v. Rhode Island Auditorium, Inc., 60 R. I. 405, 199 A. 293, the differences in the games of hockey and baseball were discussed and the decisions in New York and Canada, cited above, were reviewed.

Ivory v. Cincinnati Baseball Club, 62 Oh Ap, 514, 24 N. E. 2nd, 837, was a baseball case in which the plaintiff had full knowledge of the game and its hazards. The court discussed and pointed out the importance of knowledge of the plaintiff, citing Shanney v. Boston Madison Square Garden Corp., supra, and James v. Rhode Island Auditorium Inc., supra. It placed denial of recovery by plaintiff as a matter of law on the reason of the court in the opinion in Cincinnati Baseball Club v. Eno, 112 Oh St 175, and certification was denied by the Supreme Court.

On the issue of negligence of the defendant, it appears that six of the ten clubs in the American League, of which the defendant is a member, provide screens on the sides to protect spectators from flying pucks like the one that injured the plaintiff. Also, that one half or more of the larger arenas in the United States have such protection. It is in evidence that it is entirely possible to provide screening on the sides to protect spectators seated as was the plaintiff and still leave the extra players and penalty sections in front of the screen and open.

Following the reasoning in the decisions above reviewed and having regard for the evidence tending to show the lack of knowledge of the plaintiff as to the hazards of the game and the knowledge the defendant had of them, the court was right in submitting to the jury the issues of negligence of the de-

fendant, the contributory negligence of the plaintiff, and whether he assumed the risk of injury.

2. Error is assigned to the refusal of the court to give two special requests to charge before argument, No. 1 was as follows:

"While the proprietors of sports arenas are required under the law to exercise ordinary care for the safety of patrons, they are not the insurers of the safety of patrons. When the sport is one which in the normal course involves some hazards to the spectators, the patrons attending such sports events assume the risk of such hazards as are normally inherent in the sport."

The first sentence of this instruction is correct. The second sentence is the rule as to the hazards of baseball games. In the decisions cited above, the difference between that game and ice hockey is pointed out. Also, this statement does not take into account the element of knowledge or lack of knowledge of the plaintiff regarding the hazard assumed. That element was stated by Judge Hart in **Masters v. New York Central Rd. Co., 147 Oh St 293,** on page 300, where he said:

"Where the proximate cause of an injury is referable to the conduct of the injured party, **after knowledge of the risk of injury** and not that of a defendant who in the first instance created the risk, such risk of injury is assumed by the injured party." (Emphasis ours.)

Request No. 3 was as follows:

"The court further charges you as a matter of law that as far as screening the spectators' stand is concerned, due care on the part of the Arena management does not require that all of the spectators be screened in; the management performs its duty toward the spectators when it provides screened seats in the stands and gives spectators the opportunity of occupying them."

This language was adapted from the opinion of Judge Allen, at page 181, in the case of **Cincinnati Baseball Club Co. v. Eno, 112 Oh St 175.** That language has reference to the hazard of batted or thrown balls in the game when played on the diamond. As hereinbefore stated, the peculiar facts in that case took it out of that rule, just as the peculiar facts and hazards of a hockey game take this case out of the baseball rule as reasoned in the cases above cited.

The true rule by which the duty of the defendant in any game, be it hockey or baseball, is to be measured, is as stated in paragraph one in the syllabus in Cincinnati Baseball Club v. Eno as quoted above. The fact that the managements of so many arenas where hockey is played have erected sideline screens for the protection of their patrons is strong evidence that ordinary care may have required of the defendant to have done so. At least a jury question was presented.

The refusal of both of these requests was not error.

3. Complaint is made as to the general charge to the jury on the subjects of contributory negligence and assumption of the risk, and a part of the charge is quoted in defendant's brief. When the whole charge is read and considered, it is a fair statement of the law, and the jury could not have been confused or misled by it, and no prejudice resulted to the defendant. At the close of the charge, the court invited suggestions from counsel and defendant's counsel said he had no further instructions to request.

Finding no error prejudicial to the defendant, the judgment will be affirmed without penalty.

Judgment affirmed. Exc. Order see journal.

CONN, PJ, and FESS, J, concur.