THERESA SUTHERLAND INGERSOLL, Appellant, *v.* THE ONONDAGA HOCKEY CLUB, INC., a Domestic Corporation, and Another, Respondents.

Third Department, June 27, 1935.

*Edmund Clynes*, for the appellant.

*Stagg, Thaler & Stagg* [*Louis K. Thaler* of counsel], for the respondents.

HEFFERNAN, J. In his opinion Mr. Justice RHODES has made a correct, accurate and concise statement of the facts in this case and repetition is unnecessary

It seems to me that the evidence presents no question of fact and that the learned trial judge was correct in dismissing the complaint. The authorities are all agreed that the owner or proprietor of a public place of amusement or entertainment is not the insurer of the safety of his patrons but owes to them only the duty of reasonable care. Our conclusion is that the duty which respondents owed to appellant is to be measured by the standards of ordinary care. It is the well-settled general rule that the proprietor of a place of amusement is not an insurer of the safety of his patrons, nor is his undertaking so similar to that of a common carrier of passengers as to call for the application of the same rule of responsibility. He is bound to exercise only the degree of care that would be expected of an ordinarily careful and prudent person in his position, and his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place. The question whether the proprietor of a place of amusement has exercised reasonable care is to be determined with regard to the character of the exhibitions given and the customary conduct of spectators who witness them; and the acts of spectators injured in such place must be judged according to the conduct which ordinarily prudent people show under like circumstances. (26 R. C. L. 714.)

The rule is equally well settled that a spectator at a baseball game assumes the risk of being struck by a foul or wild-thrown ball when sitting elsewhere than behind the screen back of home plate. A spectator at a baseball game may be regarded as assuming such risks from balls as are necessarily incident to the game. Thus it is said in *Blakeley* v. *White Star Line* (154 Mich. 635; 118 N. W. 482): "It is knowledge common to all that in these games hard balls are thrown and batted with great swiftness; that they are liable to be muffed or batted or thrown outside the lines of the diamond, and visitors standing in position that may be reached by such balls have voluntarily placed themselves there with knowledge of the situation, and may be held to assume the risk." In *Crane* v. *Kansas City Baseball & Exhibition Co.* (168 Mo. App. 301; 153 S. W. 1076), in denying a recovery for injury by a foul ball, where a patron had the choice of sitting in the grand stand behind the screen, or outside in the open, and chose the latter, the court said that doubtless for the purpose of avoiding the annoyance of the slight obstruction to vision offered by the netting, the plaintiff voluntarily chose an unprotected seat, and thereby assumed the ordinary risk of such position, and, if it could not be said that he assumed the risk, still he should not be allowed to recover, since his own contributory

negligence was apparent and indisputable; that one invited to a place, who is offered a choice of two positions, one of which is less safe than the other, cannot be said to be in the exercise of reasonable care if, with full knowledge of the risks and dangers, he chooses the more dangerous place. In *Kavafian* v. *Seattle Baseball Club Assn.* (105 Wash. 215, 219; 177 P. 776; on rehearing 181 P. 679) it was held that one familiar with baseball, who, instead of taking a seat in the grand stand, protected by a screen, to which his ticket entitled him, took a seat outside of the screened area, was guilty of contributory negligence, or assumed the risk, so as to be precluded from recovery for injury through being struck by a foul ball. There the court said: " Conscious of the fact that balls are often hit ' foul,' and that wild throws sometimes result in the ball falling among the spectators, and conscious of the fact that there was no protection between the balls and himself, he continued to occupy a seat in that unscreened portion until he received his injury. It matters not whether one designates his act in this regard contributory negligence, or views it as in the nature of assumption of risk, the result is the same. The place in which he could have taken a seat would have fully protected him against the ordinary and usual hazards incident to witnessing the game in question, but he chose to sit elsewhere and substitute for that safety the compensating facility of vision. If there was a chance of danger, the respondent voluntarily took it. Having purchased a ticket which offered him a choice of two positions, he with full knowledge of the risk of injury, chose the more dangerous position."

It seems to me that appellant in attending a hockey game occupied precisely the same status as a spectator at a baseball game and that the same rules should be applied in each instance. There was no obligation on the part of respondents to protect appellant against a danger incident to the entertainment which any reasonable spectator could foresee and of which she took the risk. The risk of being hit by a baseball or by a puck at a hockey game is a risk incidental to the entertainment and is assumed by the spectators. Any other rule of law would place an unreasonable burden upon the operator of a ball park or hockey rink. In witnessing this game appellant assumed the risk of the puck going among the spectators. It is common knowledge that the puck may leave the ice when the players are shooting for a goal. There were screened areas in this Coliseum back of the goals. Sitting where she did with her escort, appellant assumed the risk. Had she desired to protect herself from that risk she could have done so by selecting a seat in the screened area away from the ringside. Evidently she selected the seat which she did in order that she might see

every movement of the players. It is argued that this was the first time she had ever attended such a performance. That does not change the rule of liability so far as respondents are concerned. Certainly it was not incumbent upon them to make inquiry of each patron on entering the premises as to whether or not he or she had ever witnessed a like performance.

In *Rich* v. *Madison Square Garden Corp.* (149 Misc. 123; affd., 241 App. Div. 722) the court held that plaintiff, who was injured by a flying hockey stick, was not entitled to recover on the ground that it was not foreseeable that a hockey stick would leave the player's hands and pass among the spectators.

In a case identical with the one under consideration, *Hammel* v. *Madison Square Garden Corp.* (156 Misc. 311) plaintiff occupied a ringside seat at a hockey game and was injured by a flying puck. The trial court submitted the case to the jury. The Appellate Term reversed plaintiff's judgment and dismissed the complaint holding that the rule announced in the baseball cases controlled.

Appellant cites many cases in her brief to support her claim that there is a question of fact for the jury. It is unnecessary to analyze these cases. They are all distinguishable.

The judgment should be affirmed, with costs.

HILL, P. J., and BLISS, J., concur; RHODES, J., dissents, with an opinion, in which McNAMEE, J., concurs.

RHODES, J. (dissenting). A nonsuit having been granted, the problem here is to determine whether the facts would have supported a verdict for the plaintiff if the jury had found the defendants negligent and the plaintiff free from contributory negligence.

On the evening of November 19, 1933, a hockey game was being conducted under the auspices of the defendants at the Coliseum, Syracuse, N. Y., between teams of the International League, the players being professionals. The public were invited and an admission fee was charged. The plaintiff, then unmarried, with Mr. Ingersoll, who is now her husband, attended the game, arriving shortly before it was to commence. Upon asking for " good tickets for the hockey game," he was told that they were pretty well sold out, and he requested them to " give me the best you have." Two tickets were sold to him and he and the plaintiff were conducted to their seats by an usher.

Behind each goal there was a wire screen twelve feet high, which extended on either side of the goal part way down the side of the rink. The entire rink was also inclosed or separated from the spectators by a side board or paneling four feet high. The seat occupied by plaintiff was partly behind the screen, so that plaintiff

was about half way behind it. Her escort sat in the next seat at her right and was not behind the screen. All the other seats immediately back of the screen were occupied.

As is well known, the contest centers around a puck, which is a hard rubber disc one inch thick and three inches in diameter, weighing three and one-half ounces. The hockey sticks are of hickory, ordinarily fifty-three inches long.

Plaintiff's witness testified that hockey is without question, in so far as the players are concerned, the most rugged sport there is in various ways; that it is without question the fastest game there is played, and as far as action among players, there is nothing to compare with it. It is a frequent occurrence during the game for a puck to go up into the stands when struck by a hockey stick. The witness testified that he had seen spectators struck by a puck going into the crowd; that he had seen a spectator thus struck at the Coliseum in question.

The plaintiff and her escort arrived about fifteen minutes before the game commenced. Mr. Ingersoll says that she objected to the seats, but does not state what her objection was. She had never seen a hockey game before and knew nothing about its details. She saw the players and did not know whether the game had commenced, as she did not understand the difference between practicing and the game itself. During the play she saw the puck go along the ice when it was struck, but she did not see it go off the ice. She was watching the game as a whole — was not watching the puck or any particular player, and did not know one play from another.

The puck went out of bounds, was returned into play on the ice by the referee. When the puck was thus placed by the referee between the two opposing players, who were poised for the face-off, those players were two or three feet from the plaintiff and her escort. He testified, " I think you could reach right out and touch the players." Plaintiff was not watching this play; she testified, " 1 was just watching all of these men out here and then I was hit. I didn't know enough about the game to be able to watch it closely." When the puck was struck at the face-off, it flew into the air and struck plaintiff in the forehead, inflicting the injuries for which she now seeks damages.

Upon these facts at the close of plaintiff's case upon defendants' motion for a nonsuit, the court below held that plaintiff had failed to establish " negligence on the part of the defendant sufficient to go to the jury," and stated that " if there was negligence here it would require the defendants to be insurers."

It should be emphasized, however, that if the facts had been submitted to the jury, the court would not thereby have been

deemed to have held as a matter of law that there was absolute liability on the part of the defendants nor that they were negligent; nor that they were required to do more than they had done to protect plaintiff. Upon the facts, it would have been for the jury to decide whether the defendants had fulfilled their duty of exercising reasonable care.

The general rule is stated in *Barrett* v. *Lake Ontario Beach Imp. Co.* (174 N. Y. 310), where plaintiff's intestate was injured on a toboggan slide claimed to have been of faulty construction. The court said: " All persons were invited, upon the payment of an entrance fee, to make use of this structure and the amusement provided for involved some risks. These risks attending an amusement which was prepared to allure the public for their emolument, the proprietors or lessors were bound to anticipate and to protect against, so far as they were not necessarily incidental thereto. A stricter measure of duty was involved, in preparing such a structure to induce the public use, and it was required that the risks should be minimized to the extent that reasonably prudent men might foresee the necessity of doing so. The risk of falling from the platform may have been apparent to persons using it; but those persons had the right to assume that they went there without incurring any risk which might have been reasonably anticipated by the proprietor of the concern. They came there by invitation and with the right to believe that every reasonable care had been taken for their safety in the erection of the slide. That an accident of the same kind had never before happened furnishes no ground of defense, if it might in reason have been anticipated. (*Cleveland* v. *N. J. Steamboat Co.*, 125 N. Y. 299; *Donnelly* v. *City of Rochester*, 166 id. 315.) "

Citing that case, the rule was concisely stated by LEHMAN, J., now of the Court of Appeals, in *Redmond* v. *National Horse Show Assn. of America, Ltd.* (78 Misc. 383), as follows: " Persons invited upon payment of an entrance fee to a place of public amusement have the right to assume that they can go there without incurring any risk which might have been reasonably anticipated by the proprietor."

In *Tantillo* v. *Goldstein Brothers Amusement Co.* (248 N. Y. 286) it is said: " Patrons are entitled to protection against acts which by their nature might cause a menace to safety. One who collects a large number of people for gain or profit must be vigilant to protect them." (See, also, *Arnold* v. *State of New York*, 163 App. Div. 253; *Platt* v. *Erie County Agricultural Society*, 164 id. 99.)

The respondents argue that the facts here are analogous to the situation where a spectator attends a baseball game. They state

that the only baseball case in point in this State is *Blackhall* v. *Capitol District Baseball Assn.* (154 Misc. 640). In addition, they cite *Easler* v. *Downie Amusement Co.* (125 Me. 334; 133 A. 905) and *Crane* v. *Kansas City Baseball & Exhibition Co.* (168 Mo. App. 301; 153 S. W. 1076).

Without discussing these cases in detail, an examination of them discloses that the spectator in each case voluntarily selected a place of danger instead of the protected inclosure.

A case in point cited by the respondents is *Hammel* v. *Madison Square Garden Corp.* (279 N. Y. Supp. 815). There, on facts similar to those here, the jury found a verdict for the plaintiff, and the Appellate Term on appeal reversed and dismissed the appeal.

The memorandum in that case cites a number of baseball cases and states that they " seem to present the same legal question," but, as above suggested, there is a differentiation between those cases and the one at bar.

In the case last cited reference is also made to *Murphy* v. *Steeplechase Amusement Co.* (250 N. Y. 479) upon the general question of the liability of the proprietor of an amusement resort. In that case the patrons, for hire, were permitted to ride upon a moving belt known as a " flopper." It was pointed out that there the plaintiff, who was a patron, took his chance when he took part in the sport by mounting the belt, and the dangers were obvious, foreseen and necessary. To like effect is *Lumsden* v. *Thompson Scenic R. Co.* (130 App. Div. 209).

In the present case the plaintiff was not a participant in the game; she was a spectator. The proof tends to show that it is not usual and customary in other hockey rinks to place any other or different screening or protection than was afforded by the defendants. The practice of others, though evidentiary and entitled to proper consideration, is not conclusive or controlling, otherwise those promoting such forms of amusement could create a rule of law for their own exemption. (*Marus* v. *Central R. R. Co.*, 175 App. Div. 783.) (See, also, *Owen* v. *Straight*, 267 N. Y. 453.)

Lastly, the defendants assert that plaintiff was guilty of contributory negligence. This cannot be held as a matter of law. (*Barrett* v. *Lake Ontario Beach Imp. Co., supra; Platt* v. *Erie County Agricultural Society, supra; Arnold* v. *State of New York, supra.*)

The judgment should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

McNAMEE, J., concurs.

Judgment affirmed, with costs.