[Civ. No. 23192. Second Dist., Div. Two. Sept. 22, 1958.]

ARTHUR MORTON, Respondent, v. CALIFORNIA SPORTS CAR CLUB (a Corporation), Appellant.

John R. Allport for Appellant.

Royal M. Galvin for Respondent.

FOX, P. J.—This is an action to recover damages for personal injuries suffered by the plaintiff while attending a sports car race in Kern County. Defendant has appealed from the adverse judgment and from the order denying its motion for judgment notwithstanding the verdict.

Plaintiff has been a member of· defendant club for many years and has attended several sports car races. He also has attended several dinner meetings of the club where films of sports car races were shown. Although he had never driven in any races, he had "assisted a little bit at the races" by keeping lap charts and picking up debris left around the course after a race. Plaintiff owned a sports car, and this was one of the reasons for his interest in sports car races.

On the day of the accident plaintiff was a member of a party of four who drove to· Bakersfield to witness a race which was being sponsored by defendant club. The members of his party drove their cars onto the grounds, paid an admission fee and parked. Although the grandstand was not filled, plain-

tiff and his party chose to view the races from various vantage points around the course. At the time of the accident plaintiff and his companions were located on one of the turns of the course about 150 feet from the track itself. Plaintiff enjoyed walking around the track during the races because he was in a better position to observe the skill of the various drivers as they negotiated the turns. The only barrier between the spectators and the track was a "snow fence" (somewhat similar to a picket fence) less than four feet high. However, there were some hay bales about 150 feet from where plaintiff was standing. Plaintiff had chosen his vantage point voluntarily. It was within the area where spectators were permitted to stand, and a great many spectators were nearby.

As one of the sports cars entered the turn on the track near plaintiff, it went into a spin and one of its wheels came off and bounded along at great speed. The wheel crashed through the snow fence and struck plaintiff's hand, thereby injuring him. There was no evidence as to what caused the wheel to come off. Defendant always took precautions to see that the vehicles which raced were in good condition and that their drivers were in good health.

At the trial defendant moved for a directed verdict after plaintiff rested his case. The trial court denied the motion and submitted the case to the jury. The jury returned a verdict in favor of the plaintiff in the sum of $2,000. Defendant then made a motion for judgment notwithstanding the verdict and a motion for new trial, and they too were denied by the trial court. Judgment was entered, and defendant thereafter prosecuted this appeal.

Defendant's principal contention is that the evidence established as a matter of law that plaintiff assumed the risk of being injured. We have determined that this contention must be sustained. The uncontradicted facts show that plaintiff was thoroughly familiar with sports car racing. Plaintiff did not choose to sit in the grandstand; nor did he choose to take a position behind any of the hay bales that were scattered around the course; his own testimony showed that there were hay bales not more than 50 yards from where he was standing. He chose instead to watch the races from a point on one of the turns where he could best observe the cars as they negotiated the turn. It was obvious to anyone that the "snow fence," which was the only barrier between plaintiff and the race track, would provide little or no protection if a sports car or a part thereof should leave the track and travel toward

the spectators. From his previous experience in connection with sports car races, plaintiff was aware of the fact that the cars travel at high rates of speed. It is common knowledge that sports car racing is a dangerous "sport," that accidents during such races are not uncommon, and that each year a number of people, both drivers and spectators, are killed or injured as a result of such accidents. It is a well known fact that most of the accidents at sports car races occur on the turns because the additional stresses and strains on the car caused by the centrifugal force being exerted against it increase the likelihood that the car will spin out of control or lose one of its parts. It is therefore obvious that one of the most dangerous places from which a spectator may view a race is on a turn.

We hold that plaintiff assumed the risk of any injury that he might receive as a result of being struck by a car, or a part of a car, participating in the races. The defense of assumption of risk is available when there has been a voluntary acceptance of a risk, and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk. (*Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 235 [282 P.2d 69] ; *Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 161-162 [265 P.2d 904].) "Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of the risk. . . ." (*Austin* v. *Riverside Portland Cement Co., supra,* p. 235; *Prescott* v. *Ralphs Grocery Co., supra,* p. 162.) In the instant case the evidence discloses that plaintiff must have had knowledge of the hazard to which he was subjecting himself by taking the position he did on the race course. He ignored this hazard in his desire to observe the races from the best (rather than safest) location. The fact that defendant may have been negligent in failing to provide sufficient protection around the course for all spectators is of no consequence since one may assume a risk even though the dangerous condition is caused by the negligence of others. (*Rogers* v. *Los Angeles Transit Lines,* 45 Cal.2d 414, 419 [289 P.2d 226] ; *Prescott* v. *Ralphs Grocery Co., supra,* p. 162.) "Indeed, the cases in which this defense is applied usually involve dangerous conditions created by the negligence of another." (*Prescott* v. *Ralphs Grocery Co., supra,* p. 162.) Of course, plaintiff could not be held to have assumed the risk that defendant created a dangerous condition by negligently per-

mitting a defective car to race on the course since one could have no knowledge of such a risk. However, there is no allegation or proof that defendant was negligent in that regard; there is no evidence that any act or omission on defendant's part was the cause of the wheel coming off, and there is affirmative evidence that defendant took precautions to see that the vehicles which raced were in good condition and that their drivers were in good health.

It should be noted that while the baseball cases in this state have usually applied the doctrine of assumption of the risk as a matter of law* (*Quinn* v. *Recreation Park Assn.*, 3 Cal.2d 725 [46 P.2d 144]; *Brown* v. *San Francisco Ball Club, Inc.*, 99 Cal.App.2d 484 [222 P.2d 19]), the ice hockey cases have treated the question as one of fact (*Shurman* v. *Fresno Ice Rink, Inc.*, 91 Cal.App.2d 469 [205 P.2d 77]; *Thurman* v. *Ice Palace, Inc.*, 36 Cal.App.2d 364 [97 P.2d 999]). But it is not necessary for us to determine in this case whether the question of assumption of risk is one of law or of fact as applied to sports car races in general. Even if we assume that the question would ordinarily be one of fact, the evidence in the instant case so clearly establishes the defense of assumption of risk that reasonable minds could not differ and the question should not, therefore, have been submitted to the jury. The court should have granted defendant's motion for directed verdict or, having failed to do this, should have granted the motion for judgment notwithstanding the verdict. The situation here is similar to that in *Bolar* v. *Maxwell Hardware Co.*, 205 Cal. 396 [271 P. 97, 60 A.L.R. 429]. In the Bolar case, an action based on negligence, the trial court denied defendant's motion for directed verdict. The jury rendered a verdict for plaintiff and defendant appealed. The Supreme Court held that the facts conclusively established a defense to the plaintiff's action, that reasonable minds could not differ on the question, and that the trial court should therefore have granted defendant's motion for a directed verdict.

---

*In *Ratcliff* v. *San Diego Baseball Club*, 27 Cal.App.2d 733 [81 P.2d 625], the court refused to apply the doctrine of assumption of risk. But the case is distinguishable from the ordinary baseball case in that plaintiff was injured by a bat which slipped from a batter's hands, travelled in the air some eighty feet into the stands along the first base line and struck her as she walked along an unscreened passageway toward her seat in the screened area. The court apparently felt that the occurrence of a flying bat was not of such common knowledge as to bring into play the theory of assumption of risk which is usually applied in baseball cases, especially where the injured person had purchased a seat in the screened area.

The cases relied upon by plaintiff, *Atlantic Rural Exposition, Inc.* v. *Fagan,* 195 Va. 13 [77 S.E.2d 368] and *Saari* v. *State,* 203 Misc. 859 [119 N.Y.S.2d 507], do not control the instant case. In the Fagan case the plaintiff was sitting in the grandstand when a wheel came off one of the racing cars, struck the 18-inch metal guard at the outer edge of the track, bounded into the air over a 42-inch wire fence, struck the ground on the spectator side of the fence, and bounded high into the grandstand and struck him. The court rejected the defense of assumption of risk on the ground that there was no evidence indicating that the plaintiff had any knowledge of the hazard of wheels breaking off the cars and bounding over the protective barriers into the stands; moreover, there was nothing to suggest to plaintiff that the grandstand was not a safe place for him to sit. In the case at bar plaintiff did not seek the apparent protection of the grandstand or the hay bales around the course; rather, he took an unprotected position on a turn in spite of the obvious danger it entailed.

In the Saari case there were no barriers or signs to indicate to spectators where they should stand to watch the races or how far from the track they should be. The claimants took a position near the track just beyond the end of a straightaway and on the outside of the entrance to a curve. They had been directed to that position by a National Guardsman, who appeared to be on police duty. One of the racing cars somehow left the track and crashed into them. The court rejected the defense of assumption of risk, pointing out that none of the claimants had ever actually witnessed an automobile race before and that they were directed to their vantage point by a National Guardsman (which thus indicated to them that they were watching the races from a proper place). Although the court's decision is somewhat questionable in light of the fact that some danger must have been apparent to the claimants, the case is distinguishable from the present situation because none of the claimants was familiar with auto racing whereas here plaintiff was thoroughly familiar with sports car racing and its attendant hazards. Moreover, the court in the Saari case did concede that ''spectators or patrons assume the obvious dangers arising from the normal operation or conduct of the sport or amusement in question.'' (*Saari* v. *State, supra,* p. 521.)

In view of the foregoing, it is unnecessary to discuss the other points raised in the briefs.

Since the trial court should have directed a verdict for defendant, we are authorized under the provisions of Code of Civil Procedure, section 629, to order that judgment be entered for defendant. (*Jordan* v. *Guerra*, 23 Cal.2d 469, 472 [144 P.2d 349]; *Bolar* v. *Maxwell Hardware Co.*, *supra*, p. 402.)

The judgment and order are reversed with directions to enter judgment for defendant.

Ashburn, J., and Herndon, J., concurred.