[Civ. No. 25914.   Second Dist., Div. Two.   Feb. 20, 1963.]

VIVIAN R. GOADE, Plaintiff and Appellant, v. BENEVO-LENT AND PROTECTIVE ORDER OF ELKS, POMONA, CALIFORNIA, LODGE NO. 789, et al., Defendants and Respondents.

McClosky, Mitchell & Markey for Plaintiff and Appellant.

Carol Glenn Wynn and Anthony M. Wynn for Defendants and Respondents.

ASHBURN, J.—This is an action for damages for personal injuries suffered by appellant while a spectator at a sports car race. The case was tried before a jury. At the close of appellant's case respondents moved the court for judgment of nonsuit, which was granted. Appellant seeks reversal of said judgment.

On January 27, 1957, appellant accompanied by friends attended sports car races being held at the Pomona Fair

Grounds by respondents Elks Club and California Sports Car Club. Grandstands with a total seating capacity of about 4,500 persons were provided for spectators at various points along the circuit of the race course. The record does not indicate whether these grandstands were filled to capacity at the time of appellant's injury. The total attendance for that day of racing was 15,000 persons.

It had rained during the day of the accident and the track was wet throughout its circuit. Appellant did not attempt to seek seating in the grandstand, for she did not know that a grandstand was available, but watched the races from a position near the car in which she had arrived and, subsequently, from a position near a "snow fence" separating the spectators and the race course itself. The "snow fence" was approximately 100 feet from the track itself. It was while in this position that appellant was injured when a sports car driven by respondent Miles was unable to negotiate a turn and went out of control and through the "snow fence" into the spectators. Appellant had chosen this vantage point voluntarily. It was within an area in which spectators were permitted to stand, and a great many spectators were nearby.

Appellant had attended automobile races some half a dozen times prior to this date and had seen motion pictures and television programs of automobile racing. She had driven an automobile for about twenty-five years, and in all kinds of weather, but she had never attended a sports car race.

"The granting of a motion for nonsuit is warranted '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' (*Card* v. *Boms* (1930), 210 Cal. 200, 202 [291 P. 190]; see also *Golceff* v. *Sugarman* (1950), *ante* [36 Cal.2d], pp. 152, 153 [222 P.2d 665]; *Blumberg* v. *M. & T. Incorporated* (1949), 34 Cal.2d 226, 229 [209 P.2d 1], and cases there cited.) 'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.' (*Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].)

■ In other words, while in most appeals it is the duty of the reviewing court to indulge every reasonable intendment in favor of sustaining the trial court, substantially the reverse is true when the appeal is from an order of nonsuit. In the latter case the appellate court must view the evidence as though judgment had gone in favor of the appellant, and order a reversal if such a judgment can be sustained.'' (*Raber* v. *Tumin,* 36 Cal.2d 654, 656 [226 P.2d 574].)

■ The trial court, relying on the case of *Morton* v. *California Sports Car Club,* 163 Cal.App.2d 685 [329 P.2d 967], held that the evidence established the defenses of contributory negligence and of assumption of risk as a matter of law. It should be noted that that opinion expressly pointed out (on page 689) that ''it is not necessary for us to determine in this case whether the question of assumption of risk is one of law or of fact as applied to sports car races in general.'' It would seem that persons attending sports car races have not as a matter of law assumed the risk; it depends upon the facts in each case.

■ ''The defense of assumption of risk is available when there has been a voluntary acceptance of a risk, and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk. (*Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 235 [282 P.2d 69]; *Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 161-162 [265 P.2d 904].)'' (*Morton* v. *California Sports Car Club, supra,* at page 688.)

■ '' 'Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of the risk, but where it merely appears that he should or could have discovered the danger by the exercise of ordinary care, the defense is contributory negligence and not assumption of risk.' (*Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 161-162 [265 P.2d 904].)'' (*Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 235 [282 P.2d 69].)

In the *Morton* case, *supra,* the court held: ''Even if we assume that the question would ordinarily be one of fact, the evidence in the instant case so clearly establishes the defense of assumption of risk that reasonable minds could not differ and the question should not, therefore, have been submitted to the jury.'' (P. 689.) In that case the plaintiff was a sports car driver and owner, a member of the defendant California Sports Car Club, a sports car enthusiast, a person

whose knowledge of sports car races included meetings where films of sports car races were shown, and a person who had not only attended several sports car races but who had actually assisted in the operation of the races. Under these facts the court concluded: "In the instant case the evidence discloses that plaintiff must have had knowledge of the hazard to which he was subjecting himself by taking the position he did on the race course [on a curve]. He ignored this hazard in his desire to observe the races from the best (rather than safest) location." (P. 688.)

The appellant here is a woman who had never been to a sports car race, never assisted in the operation of a sports car race, never saw films of such races, and had no particular interest in going to the races in question. The uncontradicted facts show that appellant herein was totally unfamiliar with *sport*s car racing although she had seen six races of other types of cars and watched other car races on television.

There was evidence in the *Morton* case that hay bales had been placed at various points on the track and that plaintiff could have taken a position behind any one of them; or he could have sat in the grandstand had he so desired, for his protection. In this case the evidence reveals that the only hay near the track was on the curves and near various structures for the purpose of protecting the drivers. The appellant and those who accompanied her testified that they did not even see any grandstands. Morton positioned himself at the most dangerous place on the track—on a curve. Appellant was positioned on the straightaway behind a "snow" fence in an area designated for spectators.

The court in the *Morton* case distinguished the case of *Saari* v. *State*, 203 Misc. 859 [119 N.Y.S.2d 507], where the plaintiffs were allowed to recover for injuries received while spectators at an auto race; the court rejected the assumption of risk argument. The court in *Morton, supra,* stated at page 690: ". . . [T]he case [*Saari* v. *State*], is distinguishable from the present situation because none of the claimants was familiar with auto racing whereas here plaintiff was thoroughly familiar with sports car racing and its attendant hazards. Moreover, the court in the *Saari* case did concede that 'spectators or patrons assume the obvious dangers arising from the normal operation or conduct of the sport or amusement in question.' (*Saari* v. *State, supra,* P. 521 [119 N.Y.S.2d].)"

The courts of California have held that assumption of the

risk of being hit by a flying puck in a hockey game is one of fact for the jury. (*Shurman* v. *Fresno Ice Rink, Inc.*, 91 Cal. App.2d 469 [205 P.2d 77]; *Thurman* v. *Ice Palace*, 36 Cal. App.2d 364 [97 P.2d 999].) In baseball, a sport often referred to as our "national pastime," it has been held that the spectator as a matter of law assumes the risk of being hit by a fly ball. (*Quinn* v. *Recreation Park Assn.*, 3 Cal.2d 725 [46 P.2d 144]; *Brown* v. *San Francisco Ball Club, Inc.*, 99 Cal.App.2d 484 [222 P.2d 19].) But when a spectator is hit by a flying baseball bat the doctrine of assumption of the risk is not applied. (*Ratcliff* v. *San Diego Baseball Club*, 27 Cal.App.2d 733 [81 P.2d 625].) The difference in the treatment of these two baseball spectators is explained by the fact that it is a matter of "common knowledge" that fly balls are a common, frequent, and expected occurrence in this well-known sport, and it is not a matter of "common knowledge" that flying baseball bats are common, frequent, or expected. It is normal operation of the game for baseball players to try to knock the ball into the bleacher stands, but not to throw the bat into the stands. Likewise, no one at a sports car race would expect that a driver would drive his car off the track and into the spectators as a normal operation of the sporting event.

Sports car racing can hardly be said to compare with the universal popularity of baseball. The risk of being hit by a fly ball is indeed a common, expected, and frequent occurrence in every baseball game. The risk of being killed or injured by a racing sports car is neither so common, frequent, nor expected an occurrence that it should be considered a matter of "common knowledge" sufficient to impose "actual knowledge" on the paying spectator who is standing in an approved spectator area.

In this case there is much evidence that appellant did not have actual knowledge. On this matter of assumption of risk we cannot say that reasonable minds could not differ on this point (as was said in *Morton, supra*) and that it would be error to submit it to a jury. The *Morton* case is factually distinguishable, as previously shown. The knowledge of Morton was much greater than appellant here, and it must be remembered that the *Morton* case did not hold that Morton had assumed the risk as a matter of law.

For the above reasons the question of assumption of the risk should have gone to the jury.

■ Concerning the question of contributory negligence

the language of *Austin* v. *Riverside Portland Cement Co., supra,* 44 Cal.2d 225, at 234, is pertinent: ''Moreover, it should be emphasized that the questions of negligence, proximate cause and contributory negligence under circumstances such as we have here are to be determined by the trier of fact. (*Nevis* v. *Pacific Gas & Elec. Co., supra,* 43 Cal.2d 626 [275 P.2d 761].)''

The trial court erred in granting the nonsuit.

Judgment reversed.

Fox, P. J., and Herndon, J., concurred.