576 A.2d 72

**David PESTALOZZI, Appellant,**

**v.**

**PHILADELPHIA FLYERS LTD, Philadelphia Hockey Club, Inc., Spectacor, Inc. and the National Hockey League.**

Superior Court of Pennsylvania.

Argued March 6, 1990.

Filed June 7, 1990.

422

Leonard L. Campbell, West Chester, for appellant.

Mark D. Mazza, West Chester, for appellees.

Before MCEWEN, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County which granted appellees' motion for summary judgment. We affirm.

On appeal, appellant argues that the lower court erroneously granted appellees' motion for summary judgment. Specifically, appellant states that genuine issues as to material facts exist which support his cause of action. In this case, appellant was struck by a hockey puck while attending a professional game as a spectator. Appellant argues that the lower court improperly found that he assumed the risk of being struck. Central to this contention, appellant states that he intentionally sought to avoid this danger by securing a seat two rows behind the protective plexiglass near center ice. We reject appellant's argument for the reasons outlined below.

As an appellate court, we are bound to consider certain principles which dictate when and under what circumstances a trial court may properly enter summary judgment. *Goebert v. Ondek*, 384 Pa.Super. 100, 104, 557 A.2d 1064, 1066 (1989). The trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, and

give to him or her the benefit of all reasonable inferences to be drawn therefrom. *Jefferson v. State Farm Insurance,* 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). Summary judgment should not be entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments,* 385 Pa.Super. 613, 615, 561 A.2d 1261, 1262 (1989). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the lower court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035, 42 Pa.C.S.A. *See Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 176, 553 A.2d 900, 903 (1989) (entire record before lower court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank,* 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988).

Citing our supreme court's decision in *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978), the lower court found that appellant had assumed the risk of personal injury and granted appellee's motion for summary judgment. In *Jones,* our supreme court discussed the so-called "no-duty" rule applicable to spectator sports. *Id.* Specifically, the court in *Jones* declared that baseball parks are not generally the insurer of its spectators with regard to batted balls. *Id.,* 483 Pa. at 84, 394 A.2d at 550. Due to the unique facts presented in the *Jones* case, however, the supreme court declined to apply the "no-duty" rule in that instance. *Id.,* 483 Pa. at 86–87, 394 A.2d at 551–52.

Thus, our probe is two-fold. First, we must determine whether the law articulated in *Jones* concerning flying baseballs is applicable to similar incidents involving hockey pucks. Second, we must decide whether this "no-duty" rule is applicable to the facts presented in the case *sub judice.* For the reasons outlined below, we find the rule applicable

and affirm the lower court's order granting appellee's motion for summary judgment.

A review of the law of this Commonwealth reveals that *Jones* shines brightly as a polestar with regard to the so-called "no-duty" rule. In *Jones,* our supreme court relied upon well-established common law concerning amusement facilities in determining the duty owed by a baseball park to its patrons. *Id.,* 483 Pa. at 81–82, 394 A.2d at 548–49. "Only when the plaintiff introduces adequate evidence that the amusement facility in which he was injured deviated in some relevant respect from established custom will it be proper for an 'inherent-risk' case to go to the jury." *Id.,* 483 Pa. at 84, 394 A.2d at 550. The court in *Jones* explained that ball park management has no duty to protect spectators from risks inherent to the game of baseball. *Id.* Most importantly, this so-called " 'no-duty' [rule applies] only to risks which are common, frequent and expected." *Id.,* 483 Pa. at 85, 394 A.2d at 551 (citations omitted).

In *Jones,* however, appellant/spectator was struck in the eye with a batted ball during batting practice while using an interior walkway within Three Rivers Stadium. *Id.,* 483 Pa. at 79–80, 394 A.2d at 547–48. Appellant was not aware that batting practice had begun and was going to the concession stand to purchase food when she was struck. *Id.,* 483 Pa. at 79, 394 A.2d at 548. Furthermore, the court in *Jones* found that appellant had not previously attended any event held in Three Rivers Stadium. *Id.,* 483 Pa. at 80, 394 A.2d at 548. In fact, our supreme court noted that the pertinent incident occurred on July 16, 1970, the facility's inaugural date. *Id.,* 483 Pa. at 79, 394 A.2d at 547. Thus, appellant in *Jones* was neither in close proximity of the playing field or cognizant of the risk involved. Given these factors, our supreme court concluded that such an incident was not a reasonably foreseeable danger inherent to the game of baseball and found the "no-duty" rule inapplicable. *Id.,* 483 Pa. at 86–87, 394 A.2d at 551–52.

■ We do not find, nor does appellant proffer, any reason for this Court to differentiate flying hockey pucks

from batted baseballs with regard to the risk assumed by the spectators of the two sports. To the contrary, we find the risks involved similar. The omnipresent specter of a deflected Mario Lemieux missile whizzing towards spectators seated at center ice is as inherent to the sport of hockey as the unnerving probability of a Von Hayes rocket flying towards patrons sitting in first base box seats is to a baseball game. Thus, we find the "no-duty" rule applicable to hockey spectators as well as baseball patrons. Therefore, we must determine whether risk in the instant case was "common, frequent and expected."

■ Unlike the spectator in *Jones*, appellant was struck by the relevant orb while sitting in close proximity to the playing surface. Also, appellant, unlike his compatriot in *Jones*, was struck during the course of the game. We reject appellant's contention that appellee was liable for his injuries since he [appellant] sought to avoid injury by purchasing seats behind the protective plexiglass. Our review of the record reveals that appellant had previously attended a professional hockey game and should have been familiar with the inherent risks involved. We find, therefore, that the risk of a spectator being struck by an errant puck, even for an individual sitting behind plexiglass, is common and reasonably foreseeable. Thus, we conclude that appellant assumed the risk of being struck by a flying puck.

Our decision with regard to this matter is consistent with the approaches taken by other states.[1] In an early decision, *Ingersoll v. Onondaga Hockey Club, Inc.*, 281 N.Y.S. 505, 245 A.D. 137 (1935), the New York Supreme Court also equated hockey spectators with their baseball counterparts and found that there was no duty on the part of the operator of a hockey game to protect a spectator from being struck by a errant puck. *Id.* The court stated as follows:

1. At least two of our sister states have decreed that injured hockey spectators assumed the risk of being struck with a flying puck with accordance with the baseball "no-duty" rule. *See Modec v. Eveleth*, 224 Minn. 556, 29 N.W.2d 453 (1947); *Ingersoll v. Onondaga Hockey Club, infra.*

There was no obligation on the part of respondents to protect appellant against a danger incident to the entertainment which any reasonable spectator could foresee and of which [he] took the risk. The risk of being hit by a baseball or by a puck at a hockey game is a risk incidental to the entertainment and is assumed by the spectator. Any other rule of law would place an unreasonable burden upon the operator of a ball park or hockey rink.

*Id.* at 508. We find this logic persuasive and consistent with our supreme court's decision in *Jones, supra.*

We find, therefore, that the lower court properly granted appellee's motion for summary judgment. Even accepting as true all of appellant's well-pleaded facts, we find that appellant is not entitled to judgment as a matter of law.[2] Thus, we affirm the order of the lower court.

Order affirmed.

**2.** This decision should not be misconstrued, however, to suggest that spectators injured at hockey games in all instances shall be barred from recovery. Utilizing *Jones* as our polestar, we note that the baseball "no-duty" rule is only applicable to risks occurring during a hockey game which are "common, frequent and expected."