**Mitchell TELEGA, an Adult Individual and Karen Telega, an Adult Individual, Appellants,**

v.

**SECURITY BUREAU, INC., a Delaware Corporation and Spectator Management Group, Appellees,**

v.

**STADIUM AUTHORITY OF the CITY OF PITTSBURGH and Spectator Management, Inc. Appellees.**

Superior Court of Pennsylvania.

Argued May 19, 1998.
Filed Oct. 29, 1998.

Myron R. Sainovich, Pittsburgh, for appellants.

Vincent Scaglione, Jr., Pittsburgh, for Sec. Bureau and Spectator Management., appellees.

Before DEL SOLE and JOYCE, JJ., and MONTEMURO *, Judge.

MONTEMURO, Judge:

Appellants, Mitchell and Karen Telega, appeal from the October 11, 1996 Order of the Allegheny County Court of Common Pleas granting summary judgment in favor of Ap-

---

* Retired Justice assigned to Superior Court.

pellee, Security Bureau, Inc. For the reasons set forth below, we reverse.

Mitchell Telega and his wife, Karen, attended a Pittsburgh Steelers football game at Three Rivers Stadium in Pittsburgh on December 6, 1992. For approximately two years, the Telegas were season ticket holders whose seats were located in Section 41, the pie-shaped end-zone section of the stadium behind the Steelers' goalpost. During the last quarter of the December 6th game, the Steelers' kicker attempted a field goal. The football was catapulted through the uprights of the goalpost, over the stadium net designed to catch it, and into the stands. Mr. Telega, who saw the ball coming his way, stood up in front of his assigned seat, extended his arms, and cleanly fielded the football. When he attempted to sit down, Mr. Telega was thrust from his seat and trampled face first into the cement aisle by aggressive fans who stripped him of the souvenir ball. Mr. Telega suffered numerous injuries from this attack, including facial lacerations, a sprained shoulder and arm resulting in extensive physical therapy, and a broken nose that required surgery.

Prior to this incident, the Telegas and other patrons seated in the end zone section of the stadium lodged complaints with the stadium's Guest Relations Office and security personnel concerning the lack of security and crowd control in their seating area during field goal and extra point attempts. They often complained that the football regularly clears the catch net, lands in the stands, and causes a disturbance among the fans, resulting in a danger to the welfare of the patrons seated in their section. It is undisputed that Appellee, Security Bureau, Inc., was responsible for providing security services at the Stadium during home games.

Appellants filed a complaint asserting a cause of action in negligence against Security Bureau, Inc., Spectacor Management Group, The Stadium Authority of the City of Pittsburgh and Spectacor Management, Inc,[1] alleging that the defendants breached a duty of care owed to Mr. Telega by, *inter alia*, failing to supervise security guards at the Stadium and failing to regulate crowd control in the end-zone seating area.[2] Security Bureau filed a motion for summary judgment which was granted by Order dated October 11, 1996. Appellants' initial appeal from the grant of summary judgment was quashed by this Court because the October 11th Order was not final as to all of the defendants. On July 22, 1997, upon a praecipe to settle and discontinue, the remaining defendants were removed from the case. Thereafter, Appellants filed this timely appeal challenging the trial court's grant of summary judgment in favor of Security Bureau, Inc.

When reviewing a grant of summary judgment, we must examine the entire record in the light most favorable to the non-moving party, in whose favor we resolve all doubts and reasonable inferences, to determine whether the moving party has established that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Kingston Coal Co. v. Felton Mining Co., Inc.*, 456 Pa.Super. 270, 690 A.2d 284, 287 (Pa.Super.1997). We will not disturb a trial court's grant of summary judgment absent an error of law or an abuse of discretion. *Albright v. Abington Memorial Hospital*, 548 Pa. 268, 279–80, 696 A.2d 1159, 1165 (1997).

In the instant case, citing to our Supreme Court's decision in *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546 (1978), the trial court determined that because "the risk of injury was obvious, reasonably foreseeable and voluntarily assumed by [Mr. Telega]," (Trial Ct. Op. at 5), Appellee owed him no legal duty. We disagree and find that the trial court's extension of the "no-duty" rule under the circumstances of this case constitutes an error of law warranting reversal.

*Jones, supra,* is the seminal case discussing the "no-duty" rule in Pennsylvania as it applies to recovery for claims filed against

---

1. The Stadium Authority of the City of Pittsburgh and Spectacor Management, Inc. were joined as additional defendants by Security Bureau, Inc.

2. In Count III of the complaint, Mrs. Telega raises a loss of consortium claim against the defendants.

amusement facilities by injured spectators and patrons.[3] This rule, which is related to but distinct from the affirmative defense of assumption of the risk, *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 531 (Pa.Super.1988), recognizes that there are certain inherent risks assumed by spectators or patrons when viewing sporting events or participating in amusements against which the amusement facility has no duty to protect. *See, e.g., Bowser v. Hershey Baseball Assoc.*, 357 Pa.Super. 435, 516 A.2d 61, 63 (Pa.Super.1986) (affirming compulsory nonsuit against plaintiff who was struck in eye by a batted baseball while conducting tryouts; when he agreed to participate on the field during the tryouts, plaintiff voluntarily exposed himself to the risks inherent in baseball such as being hit by a batted ball); *Pestalozzi v. Philadelphia Flyers, Ltd.*, 394 Pa.Super. 420, 576 A.2d 72, 74 (Pa.Super.1990) (following the principles announced in *Jones* and finding the "no-duty" rule applicable to hockey spectator who was struck by errant hockey puck during the game; being struck by a puck was a common and reasonably foreseeable risk inherent in the game of hockey). Relying on the well-established law governing the liability of amusement facility operators, the Court in *Jones* concluded that the "no-duty" rule, ordinarily applicable to patrons seated in the stands of the ballpark, should not be extended to a situation where a plaintiff was struck by a batted baseball while standing in an interior walkway of the stadium since the risk of harm in viewing the field from the concourse area could not be characterized as "part of the spectator sport of baseball." *Id.* at 86–87, 394 A.2d at 552. Although the trial court relies on *Jones* to support its extension of the "no-duty" rule in the instant matter, we find that the reasoning in *Jones* compels a different result.

Our courts have long refused to grant recovery for injuries sustained by amusement patrons which were caused by a risk inherent in the activity in question. *Id.* at 83–84, 394 A.2d at 550. For example, our Supreme Court granted judgment n.o.v. in favor of a defendant-movie theatre where the patron alleged only that his injury was caused by

the lighting conditions ordinarily utilized in the exhibition of motion pictures. *Beck v. Stanley Co. of America*, 355 Pa. 608, 615, 50 A.2d 306, 310 (1947) (noting that there was no evidence indicating that the theater and its aisles were darker than was reasonably necessary or customary). The Court has also denied recovery where a spectator at a stockcar race track was struck by one of the racing vehicles while he was standing in the unprotected "pit" area of the track; the patron admitted that his presence in the pit area was unauthorized and that collisions in this area were common. *Shula v. Warren*, 395 Pa. 428, 434–35, 150 A.2d 341, 345 (1959)(stating that not only was the appellant unauthorized to be in the pit area, "but he proceeded to the edge of the 'pit' and stood at a point where vehicles with mechanical trouble would customarily leave the track, and it was at this point that he was struck.")(emphasis omitted). The *Jones* court also discussed *Taylor v. Churchill Valley Country Club*, 425 Pa. 266, 228 A.2d 768 (1967), where the Court affirmed a directed verdict in favor of the defendant-country club and denied recovery to a golf caddie who was struck by a flying golf ball.

In accordance with the above cases, the Court in *Jones* defined the "no-duty" rule as it applies to amusement facilities by observing that

> movies must be seen in a darkened room, roller coasters must accelerate and decelerate rapidly and players will bat balls into the grandstand. But even in a "place of amusement" not every risk is reasonably expected. The rationale behind the rule that the standard of reasonable care does not impose a duty to protect from risks associated with baseball, naturally limits its application to those injuries incurred as a result of risks any baseball spectator must and will be held to anticipate.

*Jones*, 483 Pa. at 84–85, 394 A.2d at 551. To illustrate this principle, the Court cited to a California case explaining the difference between the risk of being struck by a batted ball and a flying baseball bat. The California

---

**3.** For citation to cases involving the "no-duty" rule as applied to places other than amusement

facilities, see *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 531–32 (1988).

court held that a spectator assumes the risk of being hit with a batted ball because it is a matter of " 'common knowledge' that fly balls are a common, frequent and expected occurrence in this well-known sport, and it is not a matter of 'common knowledge' that flying baseball bats are common, frequent or expected." *Id.* at 85, 394 A.2d at 551(citing *Goade v. Benevolent and Protective Order of Elks*, 213 Cal.App.2d 189, 28 Cal.Rptr. 669 (1963)). Guided by this distinction, our Supreme Court held that the "no-duty" rules

> apply only to risks which are 'common, frequent and expected,' ... and in no way affect the duty of theatres, amusement parks and sports facilities to protect patrons from foreseeably dangerous conditions not inherent in the amusement activity.

*Id.* (internal citation omitted). Although an operator of an amusement facility for which admission is charged is not an insurer of his patrons, he will be "liable for injuries to his patrons ... where he fails to use reasonable care in the construction, maintenance, and management of [the facility], *having regard to the character of the exhibitions given and the customary conduct of the patrons invited.*" *Id.* at 81, 394 A.2d at 549 (emphasis in original). Thus, it is clear that the central inquiry with respect to whether the "no-duty" rule will apply to a given situation, thereby barring recovery, is whether the injury resulted from a risk which is inherent in the amusement activity.

In the instant matter, Mr. Telega stood up in front of his seat in the end-zone section of the stadium, and caught a football which cleared the goalpost net during a field goal attempt by the Steelers. He was immediately attacked by a group of "displaced" [4] fans who relieved him of the football and thrust him into the aisle, crushing his face into the concrete and causing serious injury. Citing to *Jones, supra*, the trial court essentially concludes that the risk of being trampled by a group of fans pursuing a souvenir was common to the football game and reasonably

foreseeable based on Mr. Telega's experience. We disagree.

The "no-duty" rule applies only when the occurrence which caused the injury is inherent in the activity, i.e., is a common, frequent and expected part of the game or amusement; all other risks which may be present in the amusement facility are governed by the "ordinary" rules of negligence. *Jones*, 483 Pa. at 85, 394 A.2d at 551. Therefore, the question before this Court is whether a spectator will be held to assume as inherent in the game the risk of being attacked by displaced fans if he catches a soaring football. We believe not.

Although this type of unruly, improper fan conduct may have occurred in Mr. Telega's section of the stadium before, being trampled by displaced fans is not a risk inherent in or so ordinary a part of the spectator sport of football such that it is certain to occur at any and every stadium in the Commonwealth. The trial court's reliance on Mr. Telega's prior knowledge of such "fan upheaval" and his report of this dangerous behavior to management and security personnel is an attempt improperly to shift the focus of the "no-duty" inquiry from the risks inherent in the game of football itself to an examination of other risks which may be present in a particular football stadium.[5] By creating the notion that "if it happened before, it must be customary," the trial court concludes that if a spectator is injured at a football game, and had prior knowledge of the risk of injury, the risk is automatically an inherent part of the spectator sport and recovery is barred. This broad-sweeping extension of the "no-duty" rule inappropriately attributes to Mr. Telega the responsibility to ensure his own safety and protect himself from the behavior of aggressive fans despite the presence of Appellee whose primary obligation it was to regulate crowd control. Indeed, such an interpretation of the "no-duty" rule would permit amusement facility operators to avoid liability for "universally prevalent negligent conditions," *Jones*, 483 Pa. at 85 n. 6, 394 A.2d at 551 n. 6, and would relieve them of

---

4. The displacement seems to have been occasioned equally by the desire for a souvenir football and the lack of any impediment to fulfilling that desire.

5. Indeed, if the risk is peculiar to a given arena, one might well ask what, in the management of the facility, makes it so.

all duty to protect against any risk within the facility. This approach is clearly undesirable and defies the well-established principles of negligence.

The risk involved here is unlike the risk of being struck by an errant puck while a spectator at a hockey game, *Pestalozzi, supra,* falling down or being bumped by other skaters at a roller skating rink, *Berman, supra,* or being hit by a batted ball during baseball tryouts, *Bowser, supra.* Contrary to the instant matter, these cases involve risks that are inherent in the activity itself and are specific to the activity at any appropriate venue. They are, therefore, as a matter of law, risks assumed by the spectators and participants who patronize the amusement facilities. It is not a matter of universal knowledge that an onslaught of displaced fans is a common, frequent or expected occurrence to someone catching a souvenir football. Therefore, it cannot be said that the injuries suffered by Mr. Telega resulted from a risk that any spectator would be held to anticipate and against which an amusement facility has no duty to protect. Certainly this matter would compel a different result had Mr. Telega been injured by the aerial football itself rather than the displaced fans intent on obtaining it.

Pursuant to the established caselaw, an extension of the "no-duty" rule to the kind of risk involved in the instant matter was clearly improper. Therefore, because the trial court committed an error of law in applying the "no-duty" rule and granting summary judgment, we must reverse.[6]

Order reversed. Jurisdiction relinquished.

JOYCE, J., files a dissenting statement.

[6] We are compelled to note that the argument in Appellee's brief seems to confuse the "no-duty" rule, on which its motion for summary judgment is based, with the affirmative defense of assumption of the risk. We remind Appellee that each concept involves a different legal standard, evidentiary requirement, and burden of proof. *See Berman,* 542 A.2d at 531–32 (discussing the conceptual differences between the "no-duty" rule and the defense of assumption of the risk). Because it is clear that Appellee's motion for summary judgment was based solely on the "no-duty" rule, we will not address any implication of an assumption of the risk defense.

Further, a review of the trial court Opinion reveals that, although the court grants summary

JOYCE, Judge, dissenting.

I respectfully disagree with the majority regarding the application of the "no-duty" rule. The lower court determined that Appellants assumed the risk of personal injury and granted Appellee's motion for summary judgment. Citing to our Supreme Court's decision in *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978), the lower court reasoned that the "no duty" rule should apply under the circumstances. The majority reversed in an opinion which discusses the historic overview of the application of the "no-duty" rule and concludes that the case at bar is more akin to a spectator being struck by a baseball bat, which does not warrant granting summary judgment, than a spectator being struck by a fly-ball, which would warrant summary judgment. We cannot agree with this conclusion. The no-duty rule applies to situations which are common, frequent and expected. Most importantly, the Courts have found Appellant is required to introduce evidence that the amusement facility in which he was injured deviated in some relevant respect from the established custom in order for the case to go to the jury. *Pestalozzi v. Philadelphia Flyers Ltd.,* 394 Pa.Super. 420, 576 A.2d 72, 74 (Pa.Super.1990). Appellants failed in this respect.

Our review of the record indicated that Appellants had previously attended professional football games at Three Rivers Stadium. (Deposition of William Telega, 4/6/95, at 12). They sat in the same seats for approximately two (2) years and witnessed the fans'

judgment in favor of Appellee pursuant to an extension of the "no-duty" rule, the court also summarily concludes that "Plaintiff has failed to show a failure to regulate crowd control or supervise stadium guards was the proximate cause of Plaintiff's injuries." (Trial Ct. Op. at 4). As noted above, Appellee's motion for summary judgment was based entirely on the "no-duty" rule, arguing that the risk involved was one which was customary to the game of football; at no time did Appellee argue the lack of causation. As such, the court's gratuitous finding of no proximate cause was in error and, in any event, without support in the record.

upheaval when a football entered the stands after clearing the catch net on many prior occasions. *Id.* at 12–13. In fact, they had voiced concern over this behavior previously. *Id.* at 18–19. Specifically, Appellants expressed concern for the welfare of the patrons when such events erupted. *Id.* at 81. The risk faced in the case at bar was quite common and customary to the football game and reasonably foreseeable based on past experience. Appellants assumed the risk of being injured by displaced fans pursuing a souvenir football. Under these circumstances, I would not disturb the findings of the trial court.