## Keelan v. Dannenberg

C.P. of Monroe County, no. 6134 Civil 2000.

*James V. Fareri,* for plaintiffs.
*Paul G. Lees,* for defendant.

O'BRIEN, *J.,* December 10, 2001—The plaintiffs have filed a complaint seeking economic and noneconomic

damages resulting from personal injuries sustained by the plaintiff husband in an automobile accident on October 17, 1998, in Smithfield Township, Monroe County, Pennsylvania. In his responsive pleading, the defendant alleges in "new matter" that the plaintiffs' right of recovery was limited by their election of "limited tort" liability coverage. The defendant has now filed a motion for summary judgment challenging the right of plaintiff husband from claiming noneconomic damages. The motion is premised on the allegation that Joseph Keelan is bound by his election of "limited tort" liability coverage and the fact that he did not suffer a "serious injury" in the accident. While the plaintiffs admit that they selected the "limited tort" liability coverage, they dispute the allegation that plaintiff husband did not suffer a "serious injury." Following the submission of briefs and oral argument, defendant's motion for summary judgment with respect to the noneconomic claims of plaintiff Joseph Keelan is now before the court for disposition.

In 1990, the Pennsylvania Legislature amended the Motor Vehicle Financial Responsibility Law in an effort to reduce the spiraling cost of automobile insurance in the Commonwealth. This amendment provided that if a consumer affirmatively elects the limited tort option for liability coverage, they are barred from recovering damages for noneconomic harm unless they sustain a "serious injury." In exchange for this election, they receive a significant reduction in the premium paid to the insurance carrier for their liability coverage. The section of that statute pertinent to the dispute in the case at bar provides as follows:

"(d) Limited tort alternative.—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. *Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss* . . . ." 75 Pa.C.S. §1705. (emphasis added)

" 'Serious injury.' A personal injury resulting in death, serious impairment of bodily function or permanent serious disfigurement." 75 Pa.C.S. §1702.

In the case at bar it is undisputed that plaintiff husband's injuries did not result in death or permanent serious disfigurement. The issue in dispute is whether or not his injuries resulted in "serious impairment of bodily function."

In *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733, 740 (1998), our Supreme Court adopted the following standard for determining whether a "serious impairment of bodily function" has occurred:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment. . . . In determining whether the im-

pairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious."

The court also held that the traditional summary judgment standard was to be followed by trial courts with respect to the issue presented in the case at bar.

A motion for summary judgment is only proper in those cases where the pleadings, depositions, answers to interrogatories, and admissions on file, along with the affidavits and all other matters filed on the record, demonstrate that there is no genuine issue of material fact, and that as a result the moving party is entitled to a judgment as a matter of law. *Grossman v. Rosen,* 424 Pa. Super. 463, 623 A.2d 1 (1993); *Frederick v. Action Tire Co.,* 744 A.2d 762 (Pa. Super. 1999); *Weiner v. American Honda Motor Co.,* 718 A.2d 305 (Pa. Super. 1998). In deciding whether summary judgment is warranted and proper, the court must construe the facts on the record in a light that is most favorable to the non-moving party. The court must also resolve all doubts and reasonable inferences as to the existence of a genuine issue of material fact in favor of the non-moving party. *Frederick, supra; Telega v. Security Bureau Inc.,* 719 A.2d 372 (Pa. Super. 1998); *Kaller's Inc. v. John J. Spencer Roofing Inc.,* 388 Pa. Super. 361, 565 A.2d 794 (1989).

The evidentiary record submitted by the parties with respect to the pending motion includes a discovery deposition of the plaintiff; a videotaped deposition of the plaintiff to preserve his testimony in view of his recent

diagnosis of cancer; the office and operative notes of Joseph M. Lane M.D., an orthopedic surgeon. This record discloses that long prior to the accident in question, plaintiff husband had a hinged prosthesis replacement for his knee. Following the accident, he complained to the investigating officer, inter alia, that his leg hurt. On October 24, 1998, one week following the accident, he visited with his orthopedic surgeon in New York City. He advised the doctor that his knee had become "unsteady." On January 28, 1999, the orthopedic surgeon performed surgery under general anesthesia, and the surgical note includes the following:

"He was doing well with that controlled program until his car, a Cadillac was totalled and he had a severe varus valgus strain placed across the knee and he ruptured, in part, the plastic and it became very unstable on varus valgus manipulation. In light of these findings, it was elected to revise the plastics. We had offered to take out the joint and do a temporary removal, treat with antibiotics and then revise the whole prosthesis but he opted not to do that and wanted a suppressive program and just change the plastics. With this understood and our goals more limited, we proceeded.

"With the patient under anesthesia, his left leg was prepped and draped in a routine manner. It was elevated and exsanguinated by gravity and a tourniquet was applied without squeezing the leg. A lateral incision was carried down through the skin and subcutaneous tissue down to the prosthesis where the fluid appeared to be yellow and clear. It was taken for cultures.

"The knee was examined and it was clearly unstable on varus and valgus straining. With careful dissection, one could remove the prosthesis from the bed and examine the prosthesis directly where it was clear that the bar had buried into the medial bushing and had a significant defect as well as the anterior bumper had been deformed. Therefore, the prosthesis was disarticulated."

The plaintiff also testified that he used crutches or a cane for several weeks and that his knee, "is not exactly the same as it was prior to the accident." (N/T 33; exhibit "E.") It is a fundamental principle of tort law that a tort-feasor takes his victim as he finds him. While the automobile accident in this case may not have produced a "serious impairment of bodily function," in the average person, the result is different in a victim with a hinged prosthesis. In *Washington v Baxter, supra,* 719 A.2d at 740, our Supreme Court held that whether or not a plaintiff has sustained the serious impairment of bodily function is to be determined by a jury "unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." (footnote omitted) In this case, we conclude that reasonable minds could differ with respect to that issue. Therefore, we must deny the defendant's motion.

## ORDER

And now, December 10, 2001, the motion of defendant Ronald D. Dannenberg for summary judgment is denied.