DARRELL G. FISHER,                    )
                                      )
        Plaintiff/Appellee,           )
                                      )    Appeal No.
                                      )    01-A-01-9609-CV-00402
VS.                                   )
                                      )    Davidson Circuit
                                      )    No. 94C-212
METROPOLITAN GOVERNMENT               )
OF NASHVILLE and DAVIDSON             )
COUNTY,                               )
                                      )
        Defendant/Appellant.          )

FILED

February 26, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE WALTER C. KURTZ, JUDGE

MARY A. PARKER
209 Tenth Avenue South
Suite 511, Cummins Station
Nashville, Tennessee 37203

MARSHALL M. SNYDER
19 Music Square West
Nashville, Tennessee 37203
        Attorneys for Plaintiff/Appellee

ERNEST D. BENNETT, III
One Union Street
P. O. Box 198169
Nashville, Tennessee 37219-8169
        Attorney for Defendant/Appellant

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

The primary question involved in this appeal is whether the owner of a hockey arena violated a duty of care to a volunteer stick boy who was injured by a flying puck. The Circuit Court of Davidson County held that the owner was seventy-five percent at fault and the plaintiff twenty-five. We affirm.

## I.

The Nashville Knights, a professional hockey team in the East Coast Hockey League, play their home games in Nashville's Municipal Auditorium. The playing surface is enclosed by a low wall approximately forty-two inches high. A five foot high plexiglass shield on top of the wall also encircles the playing area, except for a wide gap at center ice around the players' benches. In this particular arena a twenty foot aisle runs from the low wall at center ice between the benches and back under the stands to the locker rooms. The benches are located just behind the wall on each side of the aisle. At the end of each bench the plexiglass shield turns ninety degrees and runs away from the ice for a few feet and turns ninety degrees again and runs behind the benches toward the center aisle. As a consequence, while the wall runs in front of the benches, there is no shield in front of the players; and there is no shield at all across the twenty-foot gap created by the aisleway.

Darrell Fisher, a twenty-one-year-old amateur hockey player, volunteered to serve as a general errand boy during the Knights' home games. One of his duties during the game was to serve as "stick-boy" and keep the hockey sticks properly arranged in a rack furnished for that purpose. The moveable rack ran perpendicular from the low wall at the edge of the playing surface back across the end of the visitors bench in the open aisle. While attending to his duties in that area on

- 2 -

January 23, 1993, Mr. Fisher was struck in the eye by a puck knocked through the gap in the plexiglass shield by one of the players on the ice.

This action followed, and after a bench trial below, the Circuit Court of Davidson County found that the negligence of the Metropolitan Government caused seventy-five percent of Mr. Fisher's injuries.

II.

The Metropolitan Government argues that they did not owe a duty of care to Mr. Fisher. The proper place to start in that analysis, however, is a recognition that everybody owes to everybody else a duty of care that is reasonable under the circumstances. *Doe v. Linder Construction*, 845 S.W.2d 173 (Tenn. 1992). It may be reasonable to do nothing, *see Eaton v. McClain*, 891 S.W.2d 587 (Tenn. 1994), in which case we do sometimes say that the defendant did not owe a duty to the plaintiff, but that can only be said after an examination of the circumstances reveals that there was no reasonably foreseeable probability of harm that the defendant could, more probably than not, have prevented. *Id.* Foreseeability is the key. *Doe v. Linder Construction*, 845 S.W.2d at 178.

In this case the trial judge made the following findings of fact:

> Hockey is a fast game. Hockey pucks sometimes travel in excess of ninety miles per hour. Ten to twelve times a game the puck leaves the ice and goes into the stands. The most dangerous areas are in the back of the goal and along the sides when the players attempt to "clear" the puck and get it to the other end by angling it off the dasherboard. Plexiglass protectors are now standard in hockey arenas and most all plexiglass protection entirely surround the ice except for the players boxes. The 20 foot gap with no plexiglass between the players boxes in Municipal Auditorium was not consistent with the standard existing in most all professional hockey arenas. The area behind the goals are normally protected by higher plexiglass than along the sides. Municipal Auditorium complied with this standard. Higher plexiglass would not, however, keep pucks out of the mezzanine, but

- 3 -

the real area of danger on the ends was directly behind the goal.

Plaintiff Darrell Fisher was 21 years-old at the time of his injury. Mr. Fisher had some limited involvement with youth hockey and was a knowledgeable hockey fan. The trainer of the Nashville Knights hockey team recruited him as a volunteer, working as a stick boy and general errand boy, during the 1992-93 hockey season. While working as a volunteer for the Knights, he would frequently be positioned during games by the side of the team bench, in the aisle way described above. This is where he was positioned when he was struck by a puck which flew from the ice during the game on January 22, 1993. At the time he was struck, he was rearranging the hockey sticks in the stick rack which was at the end of the Knight's bench, but in the aisle way. The errant puck struck Mr. Fisher in the eye, shattering his prescription glasses and lacerating the cornea of his right eye.

\* \* \*

The Court is of the opinion that Metro did owe a duty to protect Mr. Fisher. Mr. Fisher was in the unprotected aisle area where the risk of errant pucks was high. As evidence of the measure of this duty, most arenas hosting professional hockey games have plexiglass protection in this area. Furthermore, Mr. Fisher was especially vulnerable in that he was assigned a task for which his attention would often be diverted from the playing surface. On the other hand, Mr. Fisher knew that some danger existed in this area and had some responsibility for his own protection. In apportioning fault the Court has considered the discussion and the criteria set forth in Eaton v. McClain, 891 S.W.2d 587, 592 (Tenn. 1994). The Court attributes to the Metropolitan Government Seventy-Five Percent (75%) of the total negligence and to the plaintiff, Darrell Fisher, Twenty-Five percent (25%) of the total negligence.

The appellant does not take issue with the findings of fact, which are presumed to be correct. Rule 3(d), Tenn. R. App. Proc. Instead, the appellant argues that the court's conclusion conflicts with the general rule refusing to impose liability on sponsors of sporting events for injuries to participants in the game or to spectators. Our own Supreme Court in *Perez v. McConkey*, 872 S.W.2d 897 (Tenn. 1994) referred to a fan at a baseball game sitting in an unscreened seat as a person who could not recover for an injury caused by the risks inherent in the game. *See also Hudson v. Kansas City Baseball Club*, 164 S.W.2d 318 (Mo. 1942); *Stradtner v.*

*Cincinnati Reds, Inc.*, 39 Oh. App. 2d 199, 316 N.E.2d 924 (1972); and *Neinstein v. Los Angeles Dodgers, Inc.*, 229 Cal. Rptr. 612, 185 Cal. App. 3rd 176 (1986). The baseball fan rule has also been applied to hockey fans. *Pestalozzi v. Philadelphia Flyers, Limited*, 576 A.2d 72 (Pa. 1990); *Gilchrist v. City of Troy*, 494 N.E.2d 1382 (N.Y. 1986). *But see Benjamin v. State*, 453 N.Y. Supp. 2d 329 (1982); *Lemoine v. Springfield Hockey Assoc.*, 29 N.E.2d 716 (Mass. 1940); and *Thurman v. Ice Palace*, 36 Cal, App. 2d 364, 97 P.2d 999 (1939) for a contrary result involving hockey fans. *See also McGee v. Board of Education*, 226 N.Y. Supp. 2d 329 (1962) for a case resulting in no liability for injuries to <u>participants</u> in a sporting event.

Most of the cited cases were decided under the principles of assumption of the risk. In *Perez v. McConkey,* 872 S.W.2d 897 (Tenn. 1994) the Supreme Court held that the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault. Therefore, the question in this case becomes whether the defendant should have foreseen that persons in the area at ice level unprotected by the plexiglass shield were in danger of harm and that some action was required to prevent it. If the answer to that question is yes, then we must decide if the plaintiff should have also been aware of the danger and should have taken some precautions for his own safety. If the answer to that question is also yes, then we must decide how the two compare. We think the trial judge performed the proper analysis and came to the right conclusion.

### III.

The Metropolitan Government also argues that the evidence preponderates against the trial judge's finding that Mr. Fisher sustained $100,000 in damages.

The record shows that when the puck hit Mr. Fisher it knocked him unconscious, broke his glasses and lacerated his eye. The eye surgeon discovered extensive trauma to the eye and performed surgery to return the iris to the eye and otherwise restore the eye's integrity. On July 18, 1994 the surgeon performed a second operation to remove some scar tissue that had developed between the iris and the lens material, and to perform a lens implant.

In all, Mr. Fisher incurred almost $18,000 in medical expenses and must have semi-annual checkups. He is now disposed to glaucoma, retinal detachment, and a degenerative cornea. His employment choices are limited by his impaired vision and he cannot qualify with a rifle in order to volunteer for the Tennessee Defense Force State Militia, an organization he was interested in joining.

The injury caused severe pain for a while and the medicine he administered also caused considerable pain. For a while his eye was almost unbearably sensitive to light.

For all these reasons, we think the trial judge's finding of $100,000 in damages is supported by the evidence.

The judgment of the trial court is affirmed and the cause is remanded to the Cicrcuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM C. KOCH, JR., JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

DARRELL G. FISHER,                          )
                                            )
        Plaintiff/Appellee,                 )
                                            )     Appeal No.
                                            )     01-A-01-9609-CV-00402
VS.                                         )
                                            )     Davidson Circuit
                                            )     No. 94C-212
METROPOLITAN GOVERNMENT                     )
OF NASHVILLE and DAVIDSON                   )
COUNTY,                                     )     Affirmed
                                            )     and
        Defendant/Appellant.                )     Remanded

# J U D G M E N T

This cause came on to be heard upon the record on appeal from the
Circuit Court of Davidson County, briefs and argument of counsel; upon consideration
whereof, this Court is of the opinion that in the judgment of the trial court there is no
reversible error.

In accordance with the opinion of the Court filed herein, it is, therefore,
ordered and decreed by this Court that the judgment of the trial court is affirmed. The
cause is remanded to the Circuit Court of Davidson County for the execution of the
judgment of that court and for the collection of the costs accrued below.

Costs of this appeal are taxed against the Metropolitan Government of
Nashville and Davidson County, Principal, and Taylor, Philbin, Pigue, Marchetti &
Bennett, Surety, for which execution may issue if necessary.

ENTER _____.


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE